[Campbell v. Hatchett.]

# Campbell *v.* Hatchett.

## *Bill in Equity for Reformation of Lease.*

1. *Reformation of written contracts in equity.*—A court of equity has undoubted jurisdiction to reform written contracts, when, on account of mistake or fraud, they fail to express the real intention and agreement of the parties; but, in the exercise of this jurisdiction, which invades a salutary rule of evidence, the court proceeds with the utmost caution, imposing on the party complaining the burden of proving the alleged mistake by clear, exact, and satisfactory evidence, and resolving against him whatever of doubt or uncertainty the evidence may generate.

2. *Reformation of lease.*—Where a written lease, for the term of three years, recited that the agreed rent was $1,500 for the term, payable in *two* equal installments of $750 each, at the end of the first and second years of the term; and the lessor filed a bill to reform it, so as to make it show that the agreed rent was $500 for each year, though payable as specified, thereby giving him a landlord's statutory lien and remedy against the crop for each year's rent (Rev. Code, § 2961); *held*, that the supposed legal effect of the change in the contract was conclusive against the existence of the alleged mistake, since the contract, as thus reformed, would be inharmonious and inconsistent, if not impossible of legal effect and operation.

3. *Attachment for rent; splitting entire cause of action.*—If a lease for three years reserves an annual rent of $500, but stipulates that it is payable in *two* installments of $750 each, at the end of the first and second years, the lessor cannot maintain a statutory attachment on the crop for $500 (Rev. Code, § 2961), and an ordinary common-law action for the residue of one of the installments, since this would be splitting up an entire, indivisible cause of action.

4. *When rent accrues.*—In the absence of an express stipulation to the contrary, no part of the rent reserved by a lease accrues until the end of the term; and in a lease for three years, at an aggregate rent of $1,500, an express stipulation that the rent is payable in two equal installments, at the end of the first and second years, excludes an annual renting, with all its incidents.

APPEAL from the Chancery Court of Elmore.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 22d October, 1874, by W. T. Hatchett, against A. G. Campbell, David Campbell, Archie Campbell, and F. H. Mann; and sought to reform a written lease executed between said Hatchett and A. G. Campbell, and to enforce the complainant's statutory lien, as landlord, on the crop grown on the leased lands during the year 1874. A. G. Campbell sub-rented the lands, for a portion of the term, to said F. H. Mann, who occupied and cultivated them, and executed to said A. G. Campbell his several notes for the agreed rent; and these notes were claimed by said David Campbell, under alleged transfers from said A. G. Campbell, who was his father. The bill alleged that

Archie Campbell, acting as the agent of either A. G. Campbell or David Campbell, had removed a part of the crop from the lands, without the complainant's consent; and hence he was joined as a defendant. The lease sought to be reformed, which was made an exhibit to the bill, was in these words : "This agreement, made this 4th day of January, 1872, between Wm. T. Hatchett of the first part, and A. G. Campbell of the second part, witnesseth, that the party of the first part has leased or rented to the party of the second part, for the term of three years (say until the 31st day of *January*, 1874), all that portion of the plantation lately owned by Mrs. Susan A. Cunningham, and known as the 'River place,' embracing all of the cleared land west of the old plank-road, including overseer's house, cabins, stable, corn-crib, and other houses in the yard, and the cleared patches, or small fields about the quarter ; and has also granted to said party of the second part the use of all timber necessary for fire-wood, and for keeping in repair the fences and buildings on the place, but for no other purpose. And for the use of said lands and houses, the said party of the second part agrees to pay the said party of the first part fifteen hundred dollars, and two hundred and twenty-five bushels of corn, as follows : Seven hundred and fifty dollars, and seventy-five bushels of corn, to be paid by 1st November, 1872 ; seven hundred and fifty dollars, and seventy-five bushels of corn, by 1st November, 1873 ; and seventy-five bushels of corn by 1st November, 1874. And the said party of the first part agrees to deliver to the said party of the first part, on the 1st day of January, 1875, possession of said premises, and to take care of and not abuse the houses, or suffer it to be done by others, and to permit no one to trespass on said lands by building ,or opening roads or ferries, or cutting timber on the same." (Signed by both of said parties, and attested by W. L. Cunningham.)

As to the alleged mistake in this lease, which was written by Hatchett himself, the bill contained the following averments: "The consideration for said lease was an annual rent of five hundred dollars in money, and seventy-five bushels of corn, for each of the three years during which said lease was to continue, amounting in the aggregate to fifteen hundred dollars in money, and two hundred and twenty-five bushels of corn, to be paid by said Campbell. Your orator avers and charges, that the rent agreed on specifically and distinctly, between him and said Campbell, was the sum of five hundred dollars, and seventy-five bushels of corn, for each of the three years covered by the lease. The inducement which influenced your orator to accept said rent, as a

consideration for said lease, was the agreement of said Campbell to pay it at the times stated in said exhibit; but your orator avers and charges, that the said agreement as to the times of payment in no wise altered the contract to pay five hundred dollars and seventy-five bushels of corn, for each year of the time covered by said lease, as above stated. When your orator and said Campbell came to reduce said contract to writing, they failed and omitted, by mistake, to express in said writing that the rent to be paid by said Campbell was five hundred dollars, and seventy-five bushels of corn, for each year of said term; which, your orator again avers and charges, was their contract, and was intended to be expressed in writing." A joint answer was filed by the defendants, A. G. Campbell, David Campbell, and Archie Campbell; denying the existence of any mistake in the written lease, and asserting that it correctly stated the contract between the parties; and they incorporated in their answer a demurrer to the bill for want of equity. The chancellor overruled the demurrer, and, on final hearing on pleadings and proof, rendered a decree for the complainant, reforming the lease as prayed, and declaring a lien on the crop for the rent of the year 1874. From this decree the defendants A. G. Campbell, David Campbell, and Archie Campbell now appeal, and here assign it as error, jointly and severally.

WATTS & SONS, for the appellants.—Neither the bill, nor the evidence, makes out a case for equitable relief. If there was any mistake on the part of Hatchett, in drawing the lease, it was not a mistake common to both parties. To authorize the reformation of a contract, there must be clear proof of a mutual mistake.—17 Johns. 373; 33 N. Y. 676; 17 Ill. 212; 18 Ill. 492; 26 Conn. 16. Whatever mistake Hatchett made, if any, was a mistake of law, against which a court of equity will not relieve.—21 Ala. 252. To correct the lease as the bill proposes to do, would make it inconsistent with itself, and therefore impossible of performance. The complainant failing to establish his claim to relief on this ground, he can obtain no relief in any other aspect of the case.

FITZPATRICK & RUGELEY, contra.—The case made by the bill, and established by the proof, falls within the very principle stated in *Larkins v. Biddle,* 21 Ala. 256, and *Hunt v. Rousmaniere,* 1 Peters, 1, therein cited. Where the writing fails to express the actual agreement of the parties, whether by mistake, ignorance, or want of skill on the part of the draughtsman, although the mistake is as to the legal effect

of the words used, a court of equity will relieve against it; and where the correction of the mistake only explains an ambiguity, or adds a term as to which the writing is silent, as high a degree of proof is not required, as where it involves a contradiction of the writing.—*Trapp & Hill v. Moore*, 21 Ala. 696; *Gillespie v. Moore*, 2 Johns. Ch. 585; *Keisselbrock v. Livingston*, 4 Johns. Ch. 144; Willard's Equity, 300; Story's Equity, §§ 155–62.

BRICKELL, C. J.—The bill is filed by the appellee, for the reformation of a written lease, made and entered into by him as lessor, with the appellant, A. G. Campbell, as lessee, of a described tract of land, for a term of three years, commencing in January, 1872, and expiring in January, 1875. The rent stipulated for in the lease is fifteen hundred dollars, payable in two equal annual installments, of seven hundred and fifty dollars each, on the first days of November, 1872, and 1873, and two hundred and twenty-five bushels of corn, deliverable in quantities of seventy-five bushels, on the first days of November of each year of the term. The bill avers that, by mistake, the lease does not truly express the contract which was made and intended to be expressed; that the true contract was for an annual pecuniary rent of five hundred dollars, each year of the term, payable as stated in the lease. A reformation of the contract is prayed, and also a condemnation of the crop grown on the premises in 1874, to the satisfaction of so much of the unpaid rent as equals the rent for that year. The last prayer is based on the hypothesis, that, if the contract was reformed, the appellee would be entitled to the landlord's statutory lien for the rent of each year.

The jurisdiction of a court of equity to reform written instruments, which, by mistake or fraud, are so drawn as not to fulfill, or to violate the intentions of the parties, is well established. The court, in the exercise of this jurisdiction, proceeds with the utmost caution, as it involves the invasion of a salutary rule of evidence, prevailing at law and in equity. In all cases, unless the mistake is admitted, it must be proved by clear, exact, and satisfactory evidence, that the mistake exists—that the writing deviates from the intention and understanding of both parties at the time of its execution—or the court will decline interference. The presumption is, that the written instrument contains the conclusion of all previous negotiations, the final agreement of both parties; and on the party complaining of mistake rests the burden of repelling the presumption by proof. Whatever of mere doubt and uncertainty the evidence may generate, must be resolved against

[Campbell v. Hatchett.]

him, and the writing remain the sole expositor and memorial of the contract. It is not necessary to refer to authorities in support of this proposition; it has been recognized and affirmed by numerous decisions of this court.

We are not satisfied the evidence in this case proves the mistake. On the contrary, we are of the opinion it establishes that the lease truly expresses the contract the parties intended. It must be observed, the mistake, as averred, is rather in the recital of the consideration of the lease, than of the omission of any term which would affect the rights and duties of the parties. If the lease was reformed, as proposed, the lessee would be bound to the payment of the rent in the sums stated, and at the times stated. The lessor would be under no obligation to forbear demanding and compelling payment at these times. The material legal consequence, which it is supposed would result from amending or correcting the recital of the consideration, as fifteen hundred dollars, to an annual rent of five hundred dollars each year of the term, is, that the lessor would then be entitled to the statutory lien on the crops grown on the premises each year of the term, for the rent of that year. Without now considering whether this consequence would result, we are sure that, if it follows, it is conclusive against the existence of the supposed mistake. Its introduction would render the contract inharmonious and inconsistent, if not impossible of legal effect and operation in important terms, which are admitted to be correctly expressed. The statutory lien exists only for the rent of the current year, and is capable of enforcement at law only by attachment; and that could not be resorted to, without splitting up an entire, indivisible cause of action. The stipulation in the lease, or the promissory notes conforming to it, executed for the pecuniary rent, constitute the cause of action—the foundation of any suit at law for the recovery of the rent. An attachment for five hundred dollars, a part of the sum expressed in the stipulation or the notes, could not be maintained, and a separate action pursued, in the ordinary form, for the remainder. Yet, this is the necessary result of the theory of the bill, and it is to give it effect that a reformation of the contract is sought.

If the contract between lessor and lessee is silent as to the time of payment, no claim for rent arises, until the lessee has enjoyed the premises the whole time for which rent is to be paid.—*English v. Key*, 39 Ala. 113. The stipulation in the lease, as to the times of payment of the rent, controls and excludes the implication which the law would make in its absence. When the parties agreed, as it is admitted by the bill they did agree, on an aggregate rent of fifteen hundred

[Campbell v. Hatchett.]

dollars, payable in two equal annual installments for the entire term, they excluded an annual renting, or a renting on a basis of a certain sum for each year of the term, and all the incidents of such renting. If the lease had been silent, the implication of law would, as we have seen, have been that, until the expiration of the term, no rent was payable. Then, a splitting up of the aggregate amount due and recoverable into parts, as the rent of particular years of the term, would have been impossible, without destroying the entirety of the contract. So is such splitting up, or apportionment, under the lease, as it is admitted to have been made. This is apparent, when we reflect that, if the appellee, the lessor, had transferred the reversion during the term, the rent falling due after the assignment would pass to the assignee. It could not have been intended by the appellee to make a lease, by the operation of which, if he assigned the reversion after either of the notes became due and payable, any part of the note past due would pass to the assignee.

It is doubtless true that, in the negotiations preceding the lease, the annual value of the pecuniary rent was estimated at five hundred dollars, and on that basis the aggregate rent to be paid for the term was fixed. But that it was understood or agreed that the aggregate rent should be apportioned to each year of the term, any more than an apportionment to each month or quarter of the term, is not shown, and cannot be admitted. Such apportionment is excluded, and rendered impossible, by the division of the rent into two equal installments, payable annually, whereby the entire pecuniary rent would be extinguished one year in advance of the expiration of the term. The bill admits, and, independent of the admission, it is apparent from the evidence, that it was the payment of the pecuniary rent in the sums, and at the times expressed, in lieu of an annual rent—a rent for a specified sum each year of the term, falling due at the expiration of the year—which finally induced the appellee to enter into the lease.

All that can be justly said of the evidence is, that the pecuniary rent for the entire term was estimated and finally fixed on the basis of the annual value of the use and occupation of the premises each year of the term. The rent was not apportioned to each year, but was treated as an entire sum payable in equal annual installments during the term. Payment in this mode was a material inducement to the contract.

The decree of the chancellor must be reversed, and a decree here rendered, dismissing the bill at the cost of the appellee.