# Holland Blow Stave Co. *v.* Barclay, *et al.*

### *Bill to Reform Deed.*

(Decided April 8, 1915.   Rehearing denied May 20, 1915.
69 South. 118.)

1. *Reformation of Instrument; Ground.*—Where there has been a meeting of the minds of the contracting parties, and the written instrument does not express what was really intended by the parties, or where there has been a mistake of one party accompanied by fraud, or other inequitable conduct of the remaining parties, the instrument may be reformed; in the latter case, the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties.

[Holland Blow Stave Co. v. Barclay, et al.]

2. *Same; Evidence.*—A high degree of proof is required to authorize the reformation of a written instrument for mutual mistake.

3. *Same; Grounds; Mistake of Law.*—Where the complainant owned the timber on certain land with millsites, waterrights, and other privileges, and at the time· conveyed to defendant all of the timber except the oak, which complainant was then removing, and it was thought that complainant would conclude its .operation in a comparatively short time, and the parties did not consider the reservation of the millsite, and such water-right as complainant was then enjoying to be of any material importance, or as worthy of stipulation in the deed, and it was not intended by the parties that such reservation should be incorporated in the deed, such deed cannot be reformed by inserting such reservation, since, where the parties omit from a writing a contemporaneous agreement under the mistaken belief that it can be established independently of the writing there is no ground for reformation.

4. *Same; Denial; Ineffectual Relief.*—Where complainant owned the timber on a tract of land, together with the mill sites, waterrights and certain other rights and privileges, and had the right until April, 1913, to remove the timber, with the right of extension of time upon payment of $500 annually, and in September, 1911, complainant sold to defendant all of such timber except the oak timber, which complainant was then removing, and executed a deed to defendant purporting to convey all such rights and privileges without reservation, and it was then thought that complainant would complete its operation within a short time, and defendant had a mill that they desired to place at the site of complainant's mill, and were anxious to remove their timber within the limit fixed so as to avoid the expenditure required for an extension of time, assuming that a reservation of the mill site and such water-rights as complainant was then enjoying was a part of the agreement, and was omitted from the deed by mutual mistake, and assuming that, there being no time limit to the reservation, a reasonable time would be implied, still such a reasonable time had expired when the complainants in March, 1913, sought to reform the deed, and hence, a reformation thereof would be futile.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by the Holland Blow Stave Company. against D. E. Barclay and another for the reformation of a written instrument. From a decree dismissing the bill, complainants appeal. Affirmed.

E. W. GODBEY, for appellant.

BOULDIN & WIMBERLY, for appellee.

GARDNER, J.—The bill in this case was filed by the appellant against the appellees seeking the reformation of a certain deed executed by the complainant to the respondents to certain timber therein described, together with mill sites, rights of way, and other privileges named therein. The pertinent facts may be briefly stated as follows: One P. M. Robertson was the owner of the lands (1,181 acres) in Jackson county, Ala., on which the timber referred to was growing. On April 11, 1910, Robertson, by written contract, sold the timber to one A. A. McGregor, with the privilege of mill sites, rights of way, ground for tents or houses, and the use of certain barns and other houses on said premises, the use of water from the spring, etc., for the purpose of cutting and removing timber; but by said contract reserved certain privileges to himself unnecessary to note here, as they are not material to a consideration of the case. It was provided that the said McGregor should have three years, that is, until April 11, 1913, within which to remove the timber, and if not removed in that time, the same was to revert to P. M. Robertson, provided, however, that if a longer time was desired it could be procured by the payment to Robertson of the sum of $500 for each year of extension. The complainant (hereinafter designated as the Holland Company) became, by due transfer from McGregor, the owner of said contract and of the title, rights, and privileges granted therein to said McGregor. The Holland Company erected a mill on the tract of land, and engaged in manufacturing the oak timber thereon into staves, and conceived the idea of making a sale of the timber conveyed by said deed. In the course of time negotitions were begun between one J. N. Gibson representing the Holland Company, and these respondents

(to whom for convenience we refer as the Barclays), for a sale of all the timber owned by the Holland Company on said land, with the exception of the oak. After an inspection of the timber by the Barclays a trade was practically closed at a conference between the parties at the office of one Ritter. The Barclays, however, desired to examine the title of the Holland Company and have their attorney look into same, it being understood that if satisfied therewith he was to draw the deed and forward it to Gibson for execution, and complete the transaction. Gibson, in turn, forwarded it to one Weiss, at that time in Louisiana and who, as secretary of the Holland Company, was authorized to execute such deed, said Weiss, having taken no part, however, in the negotiations which led up to the transaction. The deed was duly delivered to the Barclays, and everything done to complete the transaction. That was in September, 1911. The Barclays located their mill, erected a barn and a few houses, or "shacks" as one witness referred to them, within a short distance of the land of the said Robertson, but on the property of a Mrs. Taylor, having rented it from her for a consideration of $10 a year and such waste timber as they did not need. The deed to the Barclays, following the Robertson-McGregor contract or deed, conveyed to them the mill site, right of way, use of the houses, spring, etc. Both Mills continued their operations, and on August 20, 1912, the Barclays made formal demand by letter upon the Holland Company for possession of the mill site, use of the spring, etc., conveyed by the deed, and which deed contained no reservation in favor of the Holland Company. Possession not being delivered, the Barclays in December, 1912, brought suit in ejectment against the Holland Company therefor, and on

[Holland Blow Stave Co. v. Barclay, et al.]

March 1, 1913, the Holland Company filed this bill, seeking primarily to have the deed of September 11, 1911, to the Barclays, reformed so as to insert therein a reservation to said company of the mill site and such water rights as it was then enjoying on said land "for and during and to the full extent and termination of the period when it shall have completed in due course such enterprise of manufacturing into staves, stave bolts, etc., such oak timber as is now on said land," and as incident thereto that the ejectment suit be enjoined. Temporary injunction was issued against said suit as prayed in the bill. Upon submission of the cause for final decree on the pleading and proof, the chancellor dismissed the bill and dissolved the injunction, and from this decree this appeal is prosecuted.

The complainant relied in its bill upon two theories: First, that the omission of the above-mentioned reservation in the deed was the result of a mutual mistake of the parties; and, second, if not of such mutual mistake, then it was the result of a mistake on the part of complainant, accompanied by fraud or inequitable conduct on the part of the respondents.

(1) The principles of law governing cases of this character are well understood, but for convenience we will here note a few extracts from some of the authorities: "The cases in which instruments may be reformed are: 'First, where there is a mutual mistake, that is, where there has been a meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto; and, second, where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining parties. In such cases, the instrument

may be made to conform to the agreement or transaction entered into, according to the intention of the parties.' "—*Hammer v. Lange,* 174 Ala. 340, 56 South. 573.

The evidence clearly shows that it was understood between the parties that the Barclays in the case of acceptance of the property were to have the deed prepared by their attorney, which they did, and forwarded it to Gibson by mail, and the matter was finally terminated, it seems, through the bank. It could not be seriously contended that anything was said by either of the parties in the negotiation concerning the reservation of any rights to the Holland Company to be stipulated in the deed. The parties were men of experience in that line of business, and acting at arm's length.

We fully agree with the learned chancellor "that the evidence falls far short of showing any fraud practiced by either of the defendant's in the preparation of the deed　*　*　*　or in procuring its execution," or inequitable conduct on their part in reference to said transaction. We do not doubt that this phase of the bill presents any matter of serious controversy, and it requires no further comment.

(2) The question recurs, then, as to whether or not there was mutual mistake of the parties. Speaking of a bill seeking reformation of a written instrument on account of a mutual mistake of the parties, this court in *White v. Henderson-Boyd Co.,* 165 Ala. 218, 51 South. 764, said: "To entitle a complainant to such relief, it is incumbent on him to show, by clear, exact, and convincing proof that the intention and agreement he would have substituted in the instrument was that of both parties thereto."

The high degree of proof required in cases of this character is recognized by all the authorities.

"To authorize the reformation of a contract which has been reduced to writing and signed, the proof must be clear, exact, and satisfactory: First, that the writing does not truly express the intention of the parties, that on which their two minds had agreed; and, second, what the parties had intended the writing should express."—*Guilmartin v. Urquhart,* 82 Ala. 571, 1 South. 897.

"If the proof is uncertain in any material respect it will be held insufficient; and, while the courts may feel that a great wrong has been done, they cannot grant relief by reason of uncertainty."—*Hertzler v. Stevens,* 119 Ala. 337, 24 South. 522.

In the case of *Hammer v. Lange, supra,* the above quotations are found, as is also the following from Mr. Pomeroy, that "the resulting proof must be established beyond a reasonable doubt." In the opinion it is said: "It is evident that the only authority in the court is to reform the contract so as to express that which the parties agreed on. It cannot make a new contract for the parties, nor establish that as a contract between them, which it is supposed they would have made, if they had understood the facts."

In *Campbell v. Hatchett,* 55 Ala. 548, it was said: "The court, in the exercise of this jurisdiction, proceeds with the utmost caution, as it involves the invasion of a salutary rule of evidence, prevailing at law and in equity."

(3) The chancellor in his opinion, pretermitting other considerations, reached the conclusion that the deed expressed all that the parties intended that it should express, and that while there might have been other contemporaneous agreements, they were not intended by the parties to become a part of the deed, and that if

they were intentionally omitted from the deed under the mistaken belief that such oral agreements could be established, independently thereof, this was merely a mistake of law, and not of fact.

As pertinent to the question, the following language is found in the case of *Clarke v. Hart,* 57 Ala. 390, 394: "The difficulty lies in determining, sometimes, whether the alleged mistake, sought to be corrected, falls within the rule. Chancery does not add terms to the contract, which the parties did not intend to embody in the writing. It is only when stipulations which the parties intended to express have been left out by mistake, or omitted through fraud, that the reforming powers of the chancery court can be called into exercise. If there be other contemporaneous agreements, or terms, not put in the writing, and not intended to be inserted therein, this is no mistake of fact, and furnishes no ground for equitable interposition. It is simply a mistake of law in supposing that such oral stipulations may be proved and considered in construing the writing. To allow reformation, under such circumstances, would be to create for the parties a written contract, which they intentionally left in confidence, and did not intend to express in the writing. In other words, it would enable chancery to relieve parties of all the disabilities which result from that very salutary rule of evidence which forbids that oral proof shall be received to add to, vary, or contradict the terms of a written contract.

The evidence in this record is rather voluminous, and we find no considerations of precedent, or otherwise, that would require its discussion here, in detail. It has been most carefully examined and studied. The Holland Company had been operating their stavemill, at the time of this sale, for some time, and had gotten out

a quantity of the oak timber. We are well convinced from the evidence that Mr. Johnson, who was in immediate charge of the mill, and Mr. Gibson, representing the Holland Company, were both of the opinion that to conclude their operations at that site would require a stay of only a short period, a few months, and that they would be ready to move out by about Christmas, 1911, or near that time. We are fully persuaded that the mill site, the houses, rights of way, etc., were matters of some inducement to the Barclays in the closing of this transaction, and that they were anxious to complete their operations for the removal of all their timber before the expiration of the time limit of April 10, 1913, and that they were led to believe at the time of the negotiation that the Holland Company would remain there for only a short period. We are therefore impressed from the evidence in the case that the parties to the transaction did not consider the question of reservation which is now the subject of this controversy, as of any material importance at the time, or as worthy of stipulation in the deed. When asked to detail what was said at the time of the negotiation Mr. Gibson in his answer pretermitted any statement in reference to any reserved rights of the Holland Company. Indeed, Mr. Gibson frankly states in his testimony that "there was nothing said about reserving," and he seems to state as a conclusion that they did not sell the Barclays their rights, etc. That there was no such agreement as a part of the contract we think is also supported by the evidence of Ritter, who was present with the parties during most of the negotiations. The deed was prepared and sent by mail to Gibson, who had ample opportunity for a thorough examination thereof, and he forwarded it to the company. Several days elapsed before the transaction was finally

[Holland Blow Stave Co. v. Barclay, et al.]

closed. No fraud or inequitable conduct on the part of the Barclays is disclosed by the record.

As previously stated, we are convinced that the parties did not consider this question of reservation of sufficient importance to be even discussed during the negotiations, and that it was not intended by either party that it should be incorporated in the deed. It seems to have been a matter which was intentionally left in confidence, and not one intended by the parties to be expressed in writing. It was not therefore a matter left out of the deed by mutual mistake of the parties, or omitted through the fraud of the respondents. We are therefore persuaded that the dismissal of the bill is justifiable on this theory.—*Clark v. Hart, supra.*

(4) What has been said suffices to dispose of the case, but as much argument of counsel has been devoted to still another phase of the case, we deem it not inappropriate to give it brief notice.

The insistence of complainant goes even beyond the fact that the parties intended the reservation to be incorporated in the deed, but, realizing a total lack of evidence as to any time limit for such reservation, it is urged that the law supplies this deficiency by presuming the parties intended a reasonable time, and that in determining what is a reasonable time there must be taken into consideration the nature of the duty to be performed, the relation of the parties, the character of the subject-matter of the contract and the other peculiar circumstances of the particular case.—*Alford v. Creagh,* 7 Ala. App. 358, 62 South.p 254. However, conceding all this (for the purposes of this case only), we are persuaded that complainant still must fail of relief. At the time of the filing of the bill, March 1, 1913, the Holland Company was still in possession, the time limit expiring April 10th thereafter.

There is evidence to the effect that the Barclays had another mill they desired to place at this site, and it clearly appears they were anxious to remove their timber within the time limit so as to avoid the expenditure of the $500 required for the extension, and that they were led to believe the Holland Company would vacate in a short period, the superintendent and manager for said company entertaining, in our opinion, the same view at the time.

We are persuaded that neither of the parties contemplated that a reasonable time for the Holland Company to complete its operations and vacate would extend beyond a few months, and clearly would nothing like approximate the time limit of the original contract. We fail to find any evidence of any extra effort whatever on the part of the complainant to vacate, or indeed any recognition of the rights of the respondents in this respect. A discussion of the evidence is not intended. We are convinced, from the evidence in this record, that at the time this bill was filed a reasonable time, under the peculiar facts and circumstances of this case, and as within the contemplation of the parties, for the completion of the complainant's mill operations and its removal from the site, had long since passed. Such being the case, a reformation would be futile. "There can be no equity in a bill which invokes the power of the chancery court to do a vain and useless thing."— *Jackson Lbr. Co. v. Bass,* 181 Ala. 169, 61 South. 271.

The bill was properly dismissed, and the decree of the chancery court is therefore affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.