Claud D. Scruggs, of Guntersville, for appellant.

D. Isbell, of Guntersville, for appellees.

188 So. 72

**DURAN v. SMITH et al.**

8 Div. 926.

Supreme Court of Alabama.

April 13, 1939.

FOSTER, Justice.

This appeal relates to the administration of the estate of Simeon F. Smith, deceased, who died leaving an estate consisting of land, about two hundred 'and twenty-four acres, and a small amount of personal property. His heirs were a widow and three living children, and the descendants of a fourth who had died. The estate was

removed into the circuit court, in equity, for administration.

The Tennessee Valley Authority had tentatively agreed to purchase twenty-nine acres for a fair price. The widow and heirs entered into an agreement subject to approval by the court, since the interest of minors was involved, that in lieu of the provision made for the widow by statute, she should have the personal property and an undivided one-fifth interest in the real estate absolutely, or the proceeds of its sale for division. The court confirmed this agreement, and the sale of the twenty-nine acres to the Tennessee Valley Authority, and ordered the balance of the land sold for division, and that after the payment of certain claims the proceeds should be divided so that the widow and the three living children, to-wit, Claud (or W. C.) Smith, H. S. Smith and Mary Duran, should each receive one-fifth and the nine children of the deceased child should receive each one-forty-fifth. The register made report of sale showing that he had left for distribution after paying the preferred charges the sum of $3,517.02, including the amount received from the Tennessee Valley Authority $1222.86. So that each of the five shares was $703.40. He further reported that Claud Smith and H. S. Smith had transferred all their interest to Mary Duran, and that he had paid to her their respective interests. This report was confirmed by the court on February 9, 1938.

On March 3, 1938, the said H. S. Smith and Claud (or W. C.) Smith filed a petition in the court alleging as to H. S. Smith that:

"On or about the 10th day of January, 1938, the other land belonging to the estate of Simeon F. Smith, deceased, was offered for sale at public outcry by the register and H. S. Smith became the purchaser thereof at and for the price of $2600.00.

"That this bid of H. S. Smith was not paid readily and the said H. S. Smith entered into an agreement with W. T. Duran and Mary Duran to transfer his bid to said W. T. Duran and Mary Duran in the consideration of the sum of $25.00 to be taken out of his part of distributive share of said estate.

"That when the paper was drawn up for H. S. Smith to sign transferring his bid to W. T. Duran and Mary Duran there was also added to that written transfer a transfer of his entire interest in and to all the property of said estate, including the entire interest in and to his said father's estate. This supposed transfer included his interest in the sale price of the land bought by the TVA and also the sale price of all the other land belonging to his father's estate, the total sale price of said land being over $3800.00, as shown by the register's report of said sales.

"That there were only five heirs to share equally in said estate. That said H. S. Smith had not contracted to transfer to W. T. Duran and his wife any interest in said estate, whatever, except to carry out his bid by paying for the land and that H. S. Smith would pay Duran and his wife the sum of $25.00 or allow this amount to be deducted from his share of the estate and go to Duran and his wife.

"That the paper was prepared by said Duran or some one at his request and the said H. S. Smith was deceived and defrauded in the execution and signing of said paper, and that he had no thought, nor reason, for transferring himself entirely out of the estate. That said H. S. Smith has not gotten one red dime out of the estate. That the supposed paper was fixed up and never read to him, but it was stated to the party fixing up the paper that he was merely transferring his bid to the Duran, and it would be downright fraud and deception to finally hold that he shall not receive one cent out of his father's estate. That H. S. Smith did not intend to sign any such a transfer as that, and after he was advised that the reports and papers had been returned from Judge Hawkins he came expecting to receive his share of the estate amounting to $703.40, the amount that he had been informed was coming to him out of the estate on a settlement and was confronted with the proposition that he didn't have anything there."

The assignment executed by him is as follows:

"Comes H. S. Smith, who purchased the land that was sold by the register of this court on the 10th day of January, 1938 for $2600.00 and for value received transfers and assigns his bid on said lands to W. T. Duran and Mary Duran, and asks that any sale that is confirmed be confirmed to them in lieu of, to me and that any deed made to said land will be made to them, and I also transfer and assign for value received to Mary Duran in consideration of her and W. T. Duran taking over my bid on said land all my right, title, interest and claim

in and to any funds belonging to me in the estate of Simeon F. Smith, deceased, including the funds realized from sale of all lands and direct the register of this court to pay my portion of said funds in said estate to her."

As to W. C. Smith it alleges:

"That the allegations contained in the last above named paragraph apply to the supposed transfer of W. C. Smith, one of the parties joining in this application. The said W. C. Smith made an agreement in answer to a judgment or a garnishment that had been brought over by some one from Blount County, Alabama (which was not at the time a lien on his land) that he would allow $300.00 of his part of the estate to be taken out to pay said judgment and when the supposed transfer was fixed up it was stated and understood between W. C. Smith, the Durans and those preparing the statement that he was transferring out of his part of the estate or agreeing to pay out of his part of the estate only enough to pay said $300.00 judgment and, of course, expected to get the balance of his share amounting to $403.40 and when he found out that the settlement was ready to be made he came to the register's office and asked for the balance of his money and was confronted with the proposition that he had nothing, and this was the first time that it crossed his mind at all that the written transfer also included his entire interest in said estate.

"That there was no reason or consideration whatever on his part why he should want to give away his inheritance from his father's estate. That the supposed contract of transfer is a fraud out of whole cloth so far as anything except the judgment matter. That the contract was never read to him, that he didn't understand it to mean any such as that and never thought of such as that until he was told by the register that he had nothing in the estate."

The assignment executed by him is as follows:

"Comes Claud Smith, alias W. C. Smith, one of the complainants in this case and for and in consideration that Mary Duran settle and adjust with E. H. Couch and J.

H. Thomason, partners doing business as Drs. Thomason and Couch, who have garnished my funds from the purchase of said land in this estate in this court, in consideration that she settle said matters with plaintiffs in said garnishment case, I hereby transfer and assign to her all my rights, title, claim, interest and demand in and to all of the funds in the hands of the register including all funds from the sale of lands involved in this suit, including all of the funds in the estate of Simeon F. Smith, deceased, it being my intention to transfer to her my interest in said estate, and I direct the register of this court to pay to her all the funds belonging to me, out of this estate upon settlement by her of said judgment."

The petition prayed that the court will award to H. S. Smith his share in the estate of $703.40, less $25, and to W. C. Smith his share of $703.40, less $300 paid on the judgment against him. The testimony on that petition was taken before the register and on its hearing the court granted relief. The appeal is from that decree.

The whole proceeding is in equity and the relief should be weighed in the light of equitable principles. Section 6825, Code, authorizes a court of equity to revise a contract on the application of either party so as to express the intention, when it does not truly do so, due to "mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected." Relief may be granted on that principle in such a case as this without expressly so declaring.

They did undertake to make an agreement, the court held that it was not expressive of their mutual agreement. While he did not expressly find that as written and signed, it was a mistake by one which the other knew or suspected, he might well have so expressed it. Certainly the equity and justice of the situation supports such a finding.

The decree is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.