198 So. 240
#### UNITED STATES GUARANTEE CO. v. HARRISON & OWEN PRODUCE CO.

#### HARRISON & OWEN PRODUCE CO. v. LONDON GUARANTEE & ACCIDENT CO., Limited.
#### 6 Div. 615.

Supreme Court of Alabama.

May 16, 1940.

Rehearing Denied Oct. 17, 1940.

Murphy, Hanna & Woodall, of Birmingham, for appellant United States Guarantee Co.

188

Curtis & Maddox, of Jasper, for appellee and cross-appellant Harrison & Owen.

J. P. Mudd, of Birmingham, for appellee London Guarantee & Accident Co.

Taylor & Higgins, of Birmingham, for appellee Swanger.

THOMAS, Justice.

The bill was for correction or reformation of insurance policies according to the intent and agreement of the parties.

The bill, among other things, sought a declaratory judgment and averred that complainants had the serial and motor number of both trucks, and in giving him the said numbers mistakenly gave to him the serial and motor number of the old truck, and the said agent so made the change and as changed, and as in force at the time of the accident, said policy so changed covers a 1934 model one and one-half ton Chevrolet truck, serial number 8 PD–023954 and motor number T–4068952, which is the old truck and which did not hit the child for the death of whom the suit is brought. That while said serial and motor number actually identifies the older truck it was intended that the numbers should identify the newer truck, which did hit the child. That by mutual mistake the wrong numbers were inserted, and was brought about by complainants' mistake in giving to the agent the wrong numbers. That complainants thought and believed the said policy covered the new truck that hit the child, reported the accident to the company and its agents entered into an investigation. On checking the motor number of the new truck, it was revealed that the policy did not cover it, but was in fact the numbers on the older truck. The company thereupon declined to defend the suit for the reason it says its policy does not cover the truck that hit the child, but covers the older truck which did not hit the child. At the time the change in the policy was written it was intended by complainants and the agent of the company to cover the new truck, but the identity was mistakenly given by the complainants to said agent. Said mistake was not accompanied by any fraud on the part of the agent or the complainants, but was a mutual mistake. Complainants say that said policy either covers the new truck, as it was the one intended to be insured, or that same should be reformed so as to cover same, as of the date of change by showing the motor number to be T 4635293, the number of the new truck instead of the number that said policy really bears. That said policy has in it the following clause: "It is further agreed that as respects insurance afforded by this policy under coverage A and B the company shall (a) defend in his name and behalf any suit against

the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent." Complainants say that said right or undertaking is valuable and a material part of the coverage of said policy, and the company refuses to defend said suit for the reasons set forth in the complaint.

The relief so prayed was denied by the decree of the trial court. Hence the appeal and cross-assignment of errors by parties in interest.

■ A justiciable issue is presented by the pleading under the Declaratory Judgment Act, Gen.Acts 1935, p. 777, as indicated in the original bill and in the cross-bill seeking reformation of the insurance policies because of mutual mistake. The policies were automobile liability insurance policies issued respectively by the two respondent insurance companies, one of whom is a cross-complainant.

It is shown by the pleading that a suit is pending on the law side of the court against the assured (complainant) for damages for the death of plaintiff's minor child, alleged to have been caused by the negligent operation of defendants' automobile truck. It is averred that said truck was insured apparently under one of said policies of the parties before the court, but that by mutual mistake, common to both of said policies, it was the intention of the parties that the truck should have been expressly insured, by the other of said policies exhibited by the pleadings.

■ It is averred that each of said insurance companies had denied liability, under its respective policy, to defend the damage suit at law brought by the plaintiff in that damage suit who is also made a party respondent to the instant suit, and is likewise a party co-respondent in the equity proceeding. The original bill of complaint prays for declarations as to which of said insurance companies, if either, was liable for the damage done by the truck in question and should defend the assured in said action at law for damages. This was declared to be a valuable contract right in United States Fidelity & Guaranty Company v. Hearn, 233 Ala. 31, 170 So. 59, and such is shown to have been a valuable contract right under the original pleading and policy provision exhibited.

The last-cited case has been cited with approval and followed in Jefferson County v. Johnson, 232 Ala. 406, 168 So. 450, in Herbert v. Perry, 235 Ala. 71, 177 So. 561, in Auto. Mut. Indemnity Co. v. Moore, 235 Ala. 426, 179 So. 368, in American Mutual Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677, and in Bagwell v. Woodward Iron Co., 236 Ala. 668, 184 So. 692, 118 A.L.R. 396, note.

■ It is established that when the evidence is given ore tenus before the judge rendering the decision, the usual presumptions of correctness prevail. Hodge v. Joy, 207 Ala. 198, 92 So. 171. This court must be "convinced beyond any sort of doubt" that the trial court "has erred in the decree in the cause, both as to the facts and in the application of 'sound principles of law' to the facts found in the record," before the judgment may be changed. Esco v. Davidson, 238 Ala. 653, 193 So. 308, 310; American Nat. Bank & Trust Co. v. Powell, 235 Ala. 236, 178 So. 21.

■ As stated by Mr. Justice Sayre, the rule is that after making all proper allowances and indulging all reasonable intendments in favor of the court below, "we reach a clear conclusion that the finding and judgment are wrong" (Twinn Tree Lumber Co. v. Day, 181 Ala. 565, 61 So. 914, 915), may this court hold to the contrary?

■ The rule applied as to reformation of an automobile liability insurance policy only as to the motor number of the automobile insured is that there must be shown to have been a mutual agreement to embrace a certain automobile, but that it was incorrectly described as to its number, by mutual mistake, or by the mistake of one party and fraud of the other (or the equivalent of fraud). Code, § 6825. Sufficient mutuality is shown to exist if the insurance company intended to insure a certain automobile which assured had in mind and proposed to insure by that policy. Where the mistake of the parties goes to the identity of the automobile itself to be insured, reformation is denied and the contract of insurance may be rescinded since there was no meeting of the minds of the parties. Reeves v. Thompson, 225 Ala. 204, 142 So. 663; McKleroy v. Dishman, 225 Ala. 131, 142 So. 41; National Union Fire Ins. Co. v. Lassetter, 224 Ala. 649, 141 So. 645; Warren v. Crow, 195 Ala. 568, 71 So. 92; Camper v. Rice, 201 Ala. 579, 78 So. 923; Welsh v. Neely et al., 187 Ala. 222, 65 So. 795; Miller et al. v. Morris et al., 123 Ala. 164, 27 So. 401.

The rule as to the revision of contracts as stated by the Code of 1923, § 6825, is as follows: "When, through fraud, or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court of equity on the application of the party aggrieved, so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons, in good faith and for value."

See Atlas Assur. Co. Ltd., of London, England, v. Byrne, 235 Ala. 281, 178 So. 451; Duran v. Smith et al., 237 Ala. 577, 188 So. 72.

When the evidence is carefully considered, it cannot be sufficiently or successfully urged that Harrison and Owen did not have protection under one or the other of the policies of insurance. The premiums were paid as understood and demanded to cover the two trucks with proper liability insurance. The respective agents were insuring a truck indicated and understood by them as the "old" or "new" truck, as they were used locally under the standard rules of insurance. Both trucks were of the same model and make, and used for like purposes, the difference being that one was used in travel from Jasper to Birmingham and return and the other in the vicinity of Jasper. Thus, it is evident that the risk as to the one truck was greater than the risk on the truck used locally. All parties concede that there was no fraud on the part of those that entered into the transaction, and that the liability was denied respectively because of confusion as to the numbers introduced in the policies.

Counsel for appellees Harrison & Owen Produce Company conclude the whole matter by saying that having "acted in good faith and having made no false representations and having parted with their premium money and received a policy in due course of business and the accident having occurred in the prosecution of the business mentioned in the policy" that appellees have insurance and invoke the "aid of a chancery court to designate to them" which insurance company is liable to defendant and to answer the damage suit in question.

The respondent Swanger, the plaintiff in the damage suit, joins in the prayer for declaratory judgment as to which insurance company is liable for the damage done by the new truck.

Respondent, London Guarantee & Accident Company, Ltd., answering the original bill, denied the mistake and claimed that its policy did not carry the motor number of the new truck and prays for a declaratory judgment that it did not have insurance on the new truck. And, as cross-respondent to the amended cross-bill of the United States Guarantee Company, denied that its policy did cover the truck involved in the fatal accident resulting in the death of the minor child in question; and denied any mistake on its part in the issuance of its policy.

Further cross-respondent London Company denied the charges made in the cross-bill of the mutual mistake made by the complainants and the United States Company in the endorsement upon the original policy in January, 1938, which was carried by routine into the renewal policy of that year, and alleged that the averments of the cross-bill concerning the conversations and transactions between the United States Company and the complainants concerning the report of the loss for the killing of the pig by the truck designated as the "old truck" and the honoring of said claim by the United States Company are matters immaterial and of which the London Company had no knowledge. Then the said cross-respondent prays the court to declare that the cross-respondent, the London Company, did not have in force and effect any policy of automobile insurance covering the use, ownership and operation of the truck that was involved in the said child's fatal accident.

An examination of the evidence convinces us that each of the local agents of the respective respondent insurance companies, in writing the endorsement on the insurance policy for his company in January, 1938, before the child's fatal accident in April, 1938, so as to change the motor or serial numbers of the Chevrolet truck to be further insured thereby, knew that the annual premium of the London Company policy was $106, and that the annual premium of the United States Company policy was $67; that the assureds were using the "new truck" (which later killed the child) in traffic that was heavier and that the hazard of traffic accidents was greater than around Jasper, and that the assureds were using their "old truck" (which later killed the pig) in short hauls around Jasper most of the time; that the assureds presented to said insurance agent these facts, including the further fact that they believed the

London Company which charged the higher annual premium on the insurance policy was the stronger financially of the two insurance companies and should, therefore, insure the "new truck" being usually used in the longer and more hazardous hauls, and that the United States Company policy should, therefore, insure the "old truck" being used in the short or local hauls mostly, as competent reasons why they were requesting him to have his policy by due endorsement change the motor or serial numbers of the Chevrolet truck as then thought to be correctly furnished by them to him, to accomplish their expressed desire, and that each of said local agents willingly agreed to and so intended by the endorsement made by him on his policy to have his policy so insure for the future the particular Chevrolet truck of the assureds as they then said they wanted same to be done.

We are further of the opinion, from the evidence, that the assureds, though in good faith furnished to each local agent of the respective respondent insurance companies the motor or serial numbers of the particular Chevrolet truck to be added or inserted by way of endorsement or written into the policy (as was done in the policy of the London Company) in lieu of the particular motor or serial numbers of the Chevrolet truck as originally described in the respective insurance policies, mistakenly gave the wrong motor or serial numbers and failed to give the numbers intended to be given on account of the fact that the contents of the envelopes marked, respectively, "new truck" and "old truck" had been exchanged without their knowledge. They did not observe the mistake, but on the contents of said envelopes the assureds, in good faith, relied in order to obtain the correct numbers which they furnished said agents.

Further, that when in January, 1938, the assureds obtained consent for the change of motor or serial numbers in the respective insurance policies, they in good faith, though mistakenly, believed that the London Company policy was insuring the "old truck" and the United States Company policy was insuring the "new truck," when in fact the United States Company was then insuring the "old truck" and the London Company policy was then insuring what that company and the assureds in good faith believed to be the "new truck." That after the change of motor or serial numbers was made the assureds and the United States Company mutually understood the "old truck" (which later killed the pig in March,

1938) was insured by that company's policy, and that the new routine renewal policy of that company issued in March, 1938, likewise, insured the "old truck"; and that, therefore, the assureds made report and proof of loss to the United States Company under that original policy for the killing of the pig in March, 1938, which the United States Company received, accepted and finally honored by payment on the very day the child was killed by the "new truck"; and that neither the United States Company nor the assureds knew that said company's policy mistakenly described the "new truck" instead of the "old truck" until one week after the child was killed and after the assureds had made report and proof of loss to the London Company under its policy of insurance of the child's fatal accident; that said company had for a week investigated said accident as one covered by its policy, and then, on personal inspection of the "new truck" that killed the child found that its motor number was not that described in its policy but the motor number described in the policy of the United States Company; that the London Company for that reason denied liability, whereupon the assureds notified the United States Company of the mistake and demanded that it assume liability under its policy; that the United States Company refused to do so because of said mutual mistake.

It results from the freely admitted testimony above set out that the two policies should be reformed as we have indicated to declare and decree that the London Company insured the "new truck" regardless of the numbers inserted in its said policy; and that the United States Company insured the old truck according to its proper number, as indicated by the pleading. This result is indicated in the respective testimony of Mr. Sanders, local agent for the London Company and of Mr. Jones, the local agent for the United States Company, as well as by Messrs. Owen and Harrison for complainant and as the assured.

It results that the decree of the circuit court was in error as being against the United States Guarantee Company, a corporation, and is now reversed and the cause remanded that a due and formal decree be rendered in said cause pursuant to this decision in favor of the United States Guarantee Company and against the London Guarantee & Accident Company, Ltd., a corporation, as declaring the rights and interests of the several parties in interest, as we have indicated.

The judgment of the circuit court is reversed and the costs of this appeal taxed against the London Guarantee & Accident Company, Ltd., a corporation, respondent-appellee and cross-respondent.

Reversed and rendered.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.

On Rehearing.

PER CURIAM.

Application for rehearing overruled.

THOMAS, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., dissent.

GARDNER, Chief Justice (dissenting).

Upon reconsideration of this cause I am persuaded the decree of the chancellor should be affirmed. To justify a decree of reformation of a written instrument all the authorities recognize that a high degree of proof is required.

Complainant must show "by clear, exact, and convincing proof that the intention and agreement he would have substituted in the instrument was that of both parties thereto." Holland Blow Stave Co. v. Barclay et al., 193 Ala. 200, 69 So. 118, 120. And if the proof is uncertain in any material respect it will be held insufficient. Hertzler, Jr. v. Stevens, 119 Ala. 333, 24 So. 521.

In the exercise of this jurisdiction the equity court proceeds with the utmost caution, as it involves the invasion of a salutary rule of evidence, prevailing at law and in equity. Holland Blow Stave Co. v. Barclay et al., supra; Campbell v. Hatchett, 55 Ala. 548; National Union Fire Ins. Co. v. Lassetter et al., 224 Ala. 649, 141 So. 645.

Re-examination of the record is to my mind persuasive that at the most the evidence as to any mutuality of mistake in the policies is contradictory, confused and uncertain. Missouri State Life Ins. Co. v. Finn et al., 225 Ala. 672, 145 So. 141; Lockhart v. Cameron, 29 Ala. 355.

Indeed the basic evidence as to which was the "old" and which the "new" truck is confusing, as disclosed by the record evidence of the date of the purchase of the two trucks found stated in the policies, from information, it seems given by complainants to the insurance agent at the time, which appears to be contradictory of the testimony of complainant at the trial some few years afterwards. And the trial court could properly consider also the fact that on the same afternoon of the fatal accident to the child, complainant sent their agent Richardson with a check for the premium on the "United" (to so designate it) policy, though the premium was not yet due for thirty days, and as indicating a belief on complainant's part that the "United" policy covered the truck involved in the accident.

It is clear enough also that the agents wrote down in the policies the motor number of the trucks as given them by complainant. Both trucks traveled to Birmingham, though one more than the other. But as to each, such traffic was within the permissible range of the policies, and the trial court, under the evidence, could well conclude that the difference in the premium rate as to these two policies was in no manner due to the fact that one company was stronger financially than the other, or that one truck was to travel to Birmingham more often than the other, but that such difference was due entirely to other causes. But further discussion of the evidence is unnecessary.

Suffice it is to say that the evidence as to any mutuality of mistake to justify the reformation of these policies is uncertain and confusing and by no means clear and convincing as the rule requires.

Added to the strict rule of a high degree of proof required in cases of reformation, is the other rule applicable where the trial court's decision on the facts is rested upon testimony taken orally before him and where he had the advantage of noticing the demeanor of the witnesses on the stand. His finding is to be given the weight of a jury verdict and to be overturned only when the court is convinced that the conclusion reached is plainly and palpably wrong. Patterson v. First National Bank, 229 Ala. 406, 157 So. 446.

After a re-examination of the record I find myself unable to say that the court's finding that complainant has failed to meet the burden of the high degree of proof required in such cases is plainly and palpably wrong. I conclude, therefore, that the disturbance of such finding of fact as

evidenced by the decree rendered is not justified and that of consequence the rehearing should be granted and the decree here affirmed.

I, therefore, respectfully dissent and am authorized to state Mr. Justice BROWN and Mr. Justice LIVINGSTON concur in these views.