25 So.2d 164

**PEARSON v. AGRICULTURAL INS. CO. OF WATERTOWN, N. Y., et al.**

6 Div. 376.

Supreme Court of Alabama.

March 7, 1946.

F. D. McArthur, of Birmingham, for appellant.

486

Kingman C. Shelburne and Mead, Moebes & Moloney, all of Birmingham, for appellees.

STAKELY, Justice.

This is an appeal from a final decree of the equity court. The bill seeks the reformation of a fire insurance policy and a decree for loss sustained by fire within the amount of the policy. The court denied the relief sought and refused to reform the policy so as to make it cover certain property destroyed by fire. Decision in the case turns on the apparent authority of the insurance agent who handled the transaction.

Alabama Fire Insurance Service (one of the appellees) sold and delivered to George W. Pearson (appellant), a contractor, a certificate or policy of fire insurance "On household and personal effects, jewelry in use (printed books, musical instruments, pictures, paintings, engravings, including their frames, statuary and sculpture, value not to exceed cost), belonging to insured and all members of insured's family, usual or incidental to the occupancy of the premises as a dwelling (excluding motor vehicles): also on the insured's interest or liability under contract in such property bought on the installment or partial payment plan."

The certificate or policy was in the amount of $1,000 for a term of five years from October 12, 1942, to October 12, 1947, and was issued under a master policy executed by Agricultural Insurance Company of Watertown, New York (one of the appellees). The articles insured, according to the policy, were located at "632 12th Birmingham."

On January 31, 1943, a fire at the foregoing premises destroyed certain property located there, which belonged to complainant. He made claim for the loss. Investigation showed that the claim grew out of loss of restaurant fixtures by fire.

At the time of the delivery of the policy and at the time of the fire, complainant rented a brick building known as 632 South 12th Street in Birmingham. There as a side line he operated a cafe in the front part of the building. He had his sleeping quarters in the rear part of the building.

In the sleeping quarters were household furniture and effects and in the cafe were fixtures usual to such an establishment.

Complainant testified that the agent who took his application for insurance and who delivered the policy to him and who collected the premiums was told by complainant that he would take a policy for $1,000, although the agent urged a policy for $2,000. According to complainant the agent, whom complainant had not previously known, said, "I have got the best insurance and the cheapest rates and with all this stuff you have got you ought to have at least $2,000." According to complainant they were talking about fixtures in the cafe and when complainant said, "I have got some more stuff back in the back", the agent said "No need to go in the back you have got plenty up here to take care of that."

According to complainant, the agent wrote out the application and told complainant "to sign here," which complainant did without reading the application. The application shows that it was for a fire insurance policy in the amount of $1,000 to cover HHF and contents in a dwelling. At the time of signing the application complainant paid the agent $1.08 as a monthly premium. And thereafter complainant's employee in the cafe paid the monthly premium of $1.08 in advance until the fire. Cafe equipment in excess of the amount of the policy was destroyed. There was no loss on the household furniture. Payment of the loss was denied because the insurance was on household furniture and not on cafe equipment. According to complainant, the policy was left at his place when he was not there, and he had never read the policy.

The District Manager of Alabama Fire Insurance Service, a Mr. Pearce, testified that the Alabama Fire Insurance Service was in the insurance brokerage business in what is termed "industrial fire insurance, which have premiums collected on a weekly or monthly basis." The organization sells the insurance and then places it in an affiliated company. He also testified that Alabama Fire Insurance didn't take applications or solicit applications for insurance on commercial property, cafes, restaurants and commercial fixtures; did not accept any application on that sort of material or equipment, but only applications on dwellings and household furnishings and personal effects; that Alabama Fire Insurance Service did no business on commercial property or commercial fixtures in commercial property; that the agent, Mr. Wessinger, who took the application, was on a stipulated weekly salary without commissions, but had left the service and his whereabouts was unknown; that "he was an outside solicitor, what we call an agent and collector"; that applications were taken by the people who worked for Alabama Fire Insurance Service and turned in to its office and that on the basis of these applications the policies of insurance were issued.

The proof showed that fire insurance rates that were used in Birmingham during the period involved in this cause were substantially higher on commercial fixtures than on household furnishings and effects.

The evidence as set forth was without dispute, and the equity of the bill was predicated on fraud of the agent while acting within the line and scope of his employment.

In order to justify reformation of a contract, there must have been a prior agreement which the contract, on account of mutual mistake or mistake on one side and fraud or inequitable conduct on the other, failed to express. Atlas Assur. Co., Ltd., of London, England, v. Byrne, 235 Ala. 281, 178 So. 451; Duran v. Smith, 237 Ala. 577, 188 So. 72; United States Guarantee Co. v. Harrison & Owen Produce Co., 240 Ala. 186, 198 So. 240; American-Traders' Nat. Bank v. Henderson, 222 Ala. 426, 133 So. 36; Section 59, Title 9, Code 1940. All the authorities recognize the high degree of proof required in cases of this character. Holland Blow Stave Co. v. Barclay, 193 Ala. 200, 69 So. 118; National Union Fire Ins. Co. v. Lassetter, 224 Ala. 649, 141 So. 645.

Counsel for appellant in brief states the pivotal question in the case. We quote. "There is really but one point in this case and that is vital. That part of the opinion or decree of the trial court wherein the court stated, 'The Court is of the opinion that the Agent was not acting within the scope of his authority either actual or apparent,' is the crux of the whole appeal."

Under the evidence we think the acts of the agent were clearly not within his express authority, which was to solicit applications and collect premiums for fire insurance on household furniture and effects. And it may be added that his acts

were not within his implied authority because securing an application on commercial fixtures was not connected with and essential to the business intrusted to the agent's care. Coston-Riles Lumber Co. v. Alabama Machinery & Supply Co., 209 Ala. 151, 95 So. 577; United States Bedding Co. v. Andre, 105 Ark. 111, 150 S.W. 413, 41 L.R.A.,N.S., 1019, Ann.Cas.1914D, 800. Were the acts of the agent Wessinger within his apparent authority? It is well to note here that Wessinger was the agent of Alabama Fire Insurance Service and that the liability vel non of Agricultural Insurance Company of Watertown, N. Y., will depend on the liability vel non of Alabama Fire Insurance Service. The only connection which the company executing the master policy had with appellant was through the company which issued the certificates of insurance thereunder.

While some suggestion has been made that a distinction exists between apparent authority and authority grounded on estoppel, 2 C.J.S., Agency, § 96, p. 1208, our cases and authority generally base the two upon the same elements.

" 'As between the principal and third persons, mutual rights and liabilities are governed by the apparent scope of the agent's authority which the principal has held out the agent as possessing, or which he has permitted the agent to represent that he possesses and which the principal is estopped to deny.'

"Such apparent authority is the real authority so far as affects the rights of a third party without knowledge or notice. * * *" Patterson v. Williams, 206 Ala. 527, 528, 91 So. 315.

"When one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency. * * *" Halle v. Brooks, 209 Ala. 486, 487, 96 So. 341, 342.

"The apparent authority of the agent is the same, and is based upon the same elements as the authority created by the estoppel of the principal to deny the agent's authority; that is to say, the two are correlative, inasmuch as the principal is estopped to deny the authority of the agent because he has permitted the appearance of authority in the agent, thereby justifying the third party in relying upon the same as though it were the authority actually conferred upon the agent. This has been the view of practically all the cases on the point. * * *" 2 Am.Jur. p. 86, § 104.

In the case at bar there was no previous dealing between the parties. There was no conduct on the part of the principal calculated to mislead appellant. There was nothing done by the principal which placed the agent "in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business", 2 Am.Jur. p. 86, § 104, was justified in assuming that the agent had authority to solicit fire insurance on fixtures. And the agent was only a soliciting agent, with authority to act in a particular way. See Southern States Fire Ins. Co. v. Kronenberg, 199 Ala. 164, 74 So. 63. On the contrary, the only information which the principal had, was given it by the signed application of appellant on which it acted, fortified by receipt of premiums based on rates applicable to fire insurance on household effects, and not on commercial fixtures.

Measured by the principle of estoppel, the agent was not so clothed with apparent authority, as to warrant the court in reforming the contract and putting the principal in a form of business not contemplated by it.

We think the action of the lower court was correct and free from error.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.