(108 So. 583)

### DINSMORE et al. v. J. H. CALVIN CO. (8 Div. 829.)

(Supreme Court of Alabama. April 15, 1926. Rehearing Denied June 3, 1926.)

1. **Associations** ⬅14—**Members of secret fraternal association of farmers held not liable as such for goods sold to store conducted by limited number of association.**

Members of secret fraternal association of farmers *held* not liable as such for goods sold to store conducted by limited number of association, though general convention of association formulated plans for business and at first elected directors.

2. **Joint-stock companies and business trusts** ⬅15(1).

Members of secret fraternal association of farmers, who became stockholders and directors in store conducted by limited number of such association, *held* individually liable for store's debts, notwithstanding it was legal nonentity and nobody's principal according to strict definition.

3. **Joint-stock companies and business trusts** ⬅19.

Whether stockholder in store conducted by limited number of members of farmers' fraternal association had knowledge of suit against surety company for defalcation of store's manager, to which he was party plaintiff, *held* for jury.

4. **Joint-stock companies and business trusts** ⬅15(1).

Stockholder in unincorporated store conducted by limited number of members of farmers' fraternal association may, by withdrawing from business in good faith, avoid responsibility for its future engagements, though he may be

liable for subsequent debts to creditors who had knowledge of his membership but no notice of withdrawal.

**5. Joint-stock companies and business trusts ⬯23.**

Death or withdrawal of member of unincorporated association conducting store does not work dissolution.

**6. Joint-stock companies and business trusts ⬯23.**

Stock of unincorporated association conducting store may be assigned without affecting integrity of the concern.

**7. Joint-stock companies and business trusts ⬯19.**

Significance of presence of alleged stockholder of unincorporated association, which conducted store, at directors' meeting after time when he claimed his stock was transferred, *held* for jury.

**8. Joint-stock companies and business trusts ⬯19.**

Whether certain stockholder of unincorporated association which conducted store withdrew in good faith, and whether creditor of store knew of his previous connection with it or had notice of his withdrawal, *held* questions for jury in action for goods sold.

**9. Trial ⬯314(1).**

General affirmative charge for plaintiff, in which court instructed that jury had duty to take law from court but explained that he was not trying to coerce their judgment, *held* not to amount to coercion.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge.

Action for goods, wares, and merchandise sold by the J. H. Calvin Company against J. J. Dinsmore and others. From a judgment for plaintiff, the named defendant and others appeal. Affirmed in part; reversed in part and remanded.

In its oral charge the court stated to the jury, in effect, that the charges requested by plaintiff and some of the defendants, which the court had decided to give, sufficiently covered the case; that the court would not further charge the jury; and that "if you obey those written instructions, gentlemen, you will have no trouble in reaching a verdict in this cause." Among the charges given for plaintiff were the affirmative charges as against defendants J. J. and C. M. Dinsmore, Sabotka, and Goodson.

Thereafter the court recalled the jury and, having ascertained that they had not agreed upon a verdict, charged them as follows:

"Court: I wish to say to you, gentlemen, if you will obey those written instructions I gave you, then the verdict should be for the plaintiff against those parties who are named in those written charges, as Mr. Sobotka, J. J. Dinsmore, C. M. Dinsmore, and Goodson. I also harge you that if you find for the plaintiff to ind for $2,058, with interest thereon from the 21st of November, 1921, to the present time.

"Now, what I say to you, gentlemen—I do not want you to understand or feel like I am trying to coerce your judgment, but I do say that it is the duty of the jury to take the law from the court. If I have made a mistake in giving you those charges, gentlemen, the parties against whom the judgment will be rendered, as those charges were read to you, they have their remedy in appeal to a higher court. Now, I have simply done my best, and it is your duty to take the law from the court as the court gives it to you; and I am under just as binding an oath as judge as you are as juror, and I am trying to do my duty as such; and, as I say, I do not want anything I may say to you to feel like you are coerced; but I charge you in writing that if you believe the evidence in this case your verdict should be against those four defendants for $2,058, with interest on it from the 21st of November, 1921. Now, if you carry out those instructions, the form of your verdict will be, 'we, the jury, find for the plaintiff, against' so and so 'defendants,' naming them, for such and such an amount, whatever you find the amount to be from the evidence, and one of you sign it as foreman. You may retire, gentlemen, and consider your verdict."

Exception was taken to this instruction by the court, "in view of the fact that the credibility of the evidence is solely for the jury." Further exception was taken to the instruction "wherein it was stated that the parties have a remedy by appeal."

E. W. Godbey and Wert & Hutson, all of Decatur, for appellants.

Under the evidence, it was error to give the affirmative charge against defendant J. J. Dinsmore. Gorman v. Davis Co., 118 N. C. 370, 24 S. E. 770; Fay v. Noble, 7 Cush. (Mass.) 188. The fact that a customer received rebates did not render him a partner. Zuber v. Roberts, 147 Ala. 512, 40 So. 319; Lee v. Wimberly, 102 Ala. 539, 15 So. 444. Mere holding of stock to evidence a debt for money loaned did not render Dinsmore liable. Burgess v. Seligman, 170 U. S. 31, 2 S. Ct 10, 27 L. Ed. 359; 14 C. J. 509. Not being a reputed partner, it was not necessary for him to give notice of his surrender of his so-called stock. 30 Cyc. 671; Mauldin v. Bank, 2 Ala. 502; Chamberlain v. Dow, 10 Mich. 319; Fuller v. Rowe, 57 N. Y. 25; Ind. Lbr. Co. v. Texas Ass'n, 31 Tex. Civ. App. 375, 72 S. W. 875. The oral charge of the court was in error. Wolf v. Delage, 150 Ala. 445, 43 So. 856; Sherrill v. Bank, 195 Ala. 175, 70 So. 723; Scott v. State, 110 Ala. 48, 20 So. 468; Thomas v. Smoot, 2 Ala. App. 407, 56 So. 1.

A. J. Harris, of Decatur, for appellee.

The individual members of an unincorporated trading association are individually liable, and may be sued individually. Davi-

son v. Holden, 55 Conn. 103, 10 A. 515, 3 Am. St. Rep. 40; 5 C. J. 1362; Clark v. Jones, 87 Ala. 474, 6 So. 362; Ash v. Guie, 97 Pa. 493, 39 Am. Rep. 818; Lewis v. Tilton, 64 Iowa, 220, 19 N. W. 911, 52 Am. Rep. 436. Such liability is upon the theory of agency. Bennett v. Lathrop, 71 Conn. 613, 42 A. 634, 71 Am. St. Rep. 223. It is of no legal significance that the defendants did not intend to be individually liable. Lawler v. Murphy, 58 Conn. 294, 20 A. 457, 8 L. R. A. 113; Evans v. Lilly & Co., 95 Miss. 58, 48 So. 612, 21 Ann. Cas. 1087. An exception to the oral charge must specify the particular part considered objectionable. Ala. S. & W. Co. v. Griffin, 149 Ala. 423, 42 So. 1034; Marbury Lbr. Co. v. Lamont, 169 Ala. 33, 53 So. 773. The presumption is that a person, in dealing with a firm, relies upon the credit of all of its members, and is entitled to rely on the status remaining unchanged until notified of the withdrawal of a partner. Griggs & Co. v. Levy, 63 Misc. Rep. 348, 117 N. Y. S. 116; Akin v. Van Wirt, 124 App. Div. 83, 108 N. Y. S. 327; Drewry v. McDougall, 145 N. C. 285, 59 S. E. 73.

SAYRE, J. The action was for the price of goods, wares, and merchandise sold by appellee to a number of defendants alleged in the second count of the complaint to have been "engaged in business as an unincorporated company under the name of Farmers' Co-operative Union or Farmers' Union Store." At the conclusion of the evidence the court gave the general charge for plaintiff as against the appellants, four in number. As for the other defendants named in the complaint, pleas of bankruptcy by four of them were confessed, and the rest were stricken from the complaint. The principal questions to be considered are raised by the brief filed in the interest of the defendant J. J. Dinsmore.

The Farmers' Co-operative Union was a secret fraternal organization of farmers in Morgan county, having lodges, rituals, signs, passwords, etc. A limited number of members of the union associated themselves together for the purpose of carrying on a mercantile business at Hartselle, the general purpose being to eliminate profits of middlemen and to distribute profits realized among members of the union who might trade at the store. The association for carrying on the Farmers' Union Store was organized among members of the Farmers' Union, the General Convention of which formulated the plan for the business and for a division of the anticipated profits. The General Convention also, in the beginning at least, elected directors. It appears, however, that afterwards some vacancies in the board of directors were filled by the board, but whether this was correct and general practice we are not informed. Not all members of the union were interested in the store. Individual members acquired an interest in the business of the store by the pur-

chase of stock; but, as witnesses phrased it, stock represented loans to the store which entitled the owners to receive 8 per cent. per annum out of profits and a "bonus"—the witness Kent, who managed the details of the business, referred to this bonus as a dividend —if more than 8 per cent. was earned, and their loans might be withdrawn at any time. For a time before bankruptcy ensued it was determined to divide profits among all customers, whether or not members of the union, in the ratio of their purchases; but, of course, there were no profits to divide.

[1, 2] With the information afforded by the record as to the purposes and methods of the union at large, it cannot be affirmed that appellants became liable for goods sold to the Union Store by reason solely of their membership in the union. A more definite connection with the business enterprise was necessary to create such liability. But "stockholders," to use the term apparently preferred by the witnesses, who associated themselves together for the purpose of conducting the business of the Union Store, thereby became members of a quasi partnership, and each individual liable for debts contracted by the association. In this connection, we cannot do better than to quote the following clear statement from 5 C. J. p. 1363, § 97:

"*Commercial Associations.*—An unincorporated association organized for business or profit is in legal effect a mere partnership so far as the liability of its members to third persons is concerned; and accordingly each member is individually liable as a partner for a debt contracted by the association. As each partner represents his copartners, so each member of the association represents his comembers, and each is bound by the acts of the others in the common behalf. This liability for the debts of the association is imposed on each member by law. It arises out of his membership as a necessary incident thereto. It does not depend upon any stipulation in the laws of the society making him thus liable, or upon his assent to the contract out of which the debt arises; nor is it necessary that the member should have held himself out as a partner, or that the credit should have been extended to him rather than to the association. But, on the contrary, by becoming a member, he subjects himself to liability for all debts contracted by the association within the scope of its object and during the period of his membership."

Many cases are cited in the footnote. To these may be added our cases of Clark v. Jones, 87 Ala. 481, 6 So. 362, and Burke v. Roper, 79 Ala. 142.

On the facts appearing in the record, no one could bind these appellants or any other members of the general organization as partners or parties to an enterprise or contract of which they had no knowledge and to which they did not assent; but, to speak cautiously, those who engaged in the business, that is, became members of the organization for the purpose of carrying on the store or reaping

profit from its business, became thereby liable for its obligations. Lewis v. Tilton, 64 Iowa, 220, 19 N. W. 911, 52 Am. Rep. 436.

Within the letter and fair import of the foregoing statements of principle, it is clear on the facts that appellant defendants were, prior to the date of the account in suit, so connected with the business of the store as to make them liable for goods furnished to that concern, and this is true, we think, notwithstanding the store, a legal nonentity, was nobody's principal according to strict definition—indeed, they are made liable because of that fact. Lewis v. Tilton, supra. All the appellants were members of the Farmers' Cooperative Union, all took stock in the Union Store, and three of them at least, Sabotka, Goodson, and C. M. Dinsmore, participated actively as directors in the conduct of the business until it wound up in the bankruptcy court. Fuller v. Rowe, 57 N. Y. 26.

[3-6] As for appellant J. J. Dinsmore, he at one time owned stock in the store for which he advanced money, traded there, indorsed its notes—just how executed as to principal does not appear—attended a meeting of stockholders where the affairs of the store were discussed, and was elected a director. There was testimony of witnesses to the effect that the stockholders got the benefit of the business, 8 per cent. and a dividend besides, if more was earned; but whether by this they meant that interest and dividends were actually paid, or only that the plan contemplated such payments, is not clear. J. J. Dinsmore's testimony was that he got 8 per cent. on his stock, but that he got nothing more in the way of bonus or dividend. The evidence showed that along with 75 or 80 other plaintiffs, describing themselves as "associated and doing business under the name of the Farmers' Co-operative Union," whereby, as the evidence disclosed, they meant the business of the store, the name of this appellant was used in bringing a suit against the National Surety Company on account of the defalcation of one Self, who prior to that time had managed the business. The other appellants in this cause also appeared as plaintiffs in that. The money collected went to the credit of the store with the bank. But this appellant denied that he knew anything of the suit. That made a jury question. But whatever may have been the truth as to that, the facts· of undisputed proof warrant and require the conclusion that the connection of J. J. Dinsmore with the business of the store was such as made him liable for its obligations assumed or contracted during that connection. But he contends that, prior to the time when appellee furnished the goods, wares, and merchandise on account of which this suit is brought, he severed all connection with the business of the store. If this contention was sustained by the proof, a legal defense was established. We think it clear that

by withdrawing from the business in good faith he might thus avoid responsibility for its future engagements. The chief difference between such associations and partnerships, so far as concerns outsiders who deal with them, appears to be that the death or withdrawal of one or more members does not work a dissolution, and that stock may be assigned without affecting the integrity of the concern. In these respects such associations partake of the nature of corporations. Burke v. Roper, supra; Lumber Co. v. Pine Land Association, 31 Tex. Civ. App. 379, 72 S. W. 875; 4 Cyc. 315; 5 C. J. 1338.

[7] Appellant J. J. Dinsmore testified that, after previous indebtedness to plaintiff had been paid in full and prior to the first item of the account here in suit, he transferred his stock to his sister in part payment of a debt he owed her and had had no further interest in or connection with the business of the store. For the certificate of stock thus transferred his transferee afterwards, but prior to the bankruptcy, collected its face value from the store. For the plaintiff the evidence went to show that this appellant attended the last meeting of the directors, shortly before bankruptcy, where that step was discussed, and was there elected or designated in some way to serve as secretary of the meeting. This circumstance appellant explained as follows: Appellant was with his brother, C. M. Dinsmore, and went casually with him to the place of the meeting, but declined to serve as secretary, and after 10 or 15 minutes left the place without taking any part in the proceedings. The full and true significance of his presence at this meeting of directors was, also, a question for the jury.

[8] There is no evidence that J. J. Dinsmore gave notice of his retirement from the association. Plaintiff had had dealings with the association prior to the time of the bill in suit. Plaintiff, a wholesale merchant, had furnished goods to the store on credit for retail. That relation continued over the time in which the goods in suit, so to speak, had been furnished. Whether J. J. Dinsmore's connection with the business—assuming for the moment that he severed his connection before the creation of the account in suit—was known to plaintiff, or not, does not appear. Recurring to the analogy afforded by the law of partnership, if, on principles heretofore stated, this appellant had responsible connection, as a member of the store association or the quasi partnership, with dealings prior to the time of the bill in suit and was known to plaintiff as a member, this appellant should have brought home to plaintiff notice of his retirement in order to exonerate himself in the matter of future dealings. Park v. Wooten, 35 Ala. 245; Mauldin v. Bank, 2 Ala. 510; 5 C. J. 1362. A retiring member of such an association may be liable for subsequent debts

to creditors who had knowledge of his membership, but had not had notice of his withdrawal. Tyrrell v. Washburn, 6 Allen (Mass.) 466. On the evidence in this record we hold that whether J. J. Dinsmore withdrew in good faith, whether plaintiff knew of his previous connection with the Union Store, and whether plaintiff had notice of his withdrawal—if the inquiry reached that stage—were all questions for jury decision.

[9] It is now complained that the trial judge by his remarks to the jury adopted so peremptory a tone as to amount to coercion. We think that what the court said to the jury was no more in effect than the general affirmative charge. Certainly, the record makes it clear that the court intended nothing more.

It results from what has been said that the judgment as against appellants C. M. Dinsmore, Sabotka, and Goodson must be affirmed. As for appellant J. J. Dinsmore, the question of liability should have been submitted to the jury.

Affirmed in part; reversed in part, and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.