The Circuit Court of Madison County entered judgment in favor of the plaintiff in the amount of $3,114.01. The defendant appeals and we affirm.
The dispositive issue on appeal is whether there is evidence to support the trial court's judgment.
Viewing the record with the attendant presumption, the following is found:
The defendant, Guy Hunt, was the Republican gubernatorial candidate in the general election of November, 1978. Prior to the election, a fund-raising plan was devised which consisted of mass mailing of campaign literature requesting contributions. The contributions were to be used in a media campaign several weeks before election day. The defendant initially rejected the fund raising plan because over $20,000 was needed to get the plan underway.
Jim Hooley, who served at various times as campaign manager and as consultant for defendant, and Greg Sullivan, from a retained public relations firm, came back with a second proposal whereby they would solicit "loans" to obtain the money necessary to begin the fund raising drive.
Hooley and Sullivan met with Hunt and discussed the idea. Hunt told Hooley and Sullivan to go ahead with the plan. Hooley and Sullivan were to raise $15,000 from "loans." This money would be used to pay for printing, mailing lists, and postage. Any contributions received were to be used to pay back the people who "loaned" money for the venture. The excess was to be used in the media campaign.
Hooley and Sullivan traveled extensively both out-of-state and in-state trying to raise money. The Hunt campaign paid for the travel expenses incurred in these efforts with campaign funds. Eventually, the necessary money was raised. A checking account was opened in the name of "Guy Hunt Campaign Committee Special Account." Hooley was listed as the only person authorized to sign checks on this account. Apparently, the separate account was set up to satisfy "Citizens for the Republic," a national organization which provided $5,000 to get the plan underway. *Page 211 
Next, Hooley sent his ideas to a firm which designed the brochures to be mailed out. The campaign paid for the expense of having this material designed with campaign funds. Proofs of the brochures were shown to Hunt, who testified he read and approved them. At the bottom of the brochures, the following appeared: "Pd. Pol. Adv. by Guy Hunt Campaign, Cullman, Al Carl Woodard, Chmn. printed by O. Davis Enterprises, Huntsville, Al.".
Hooley and Sullivan then contacted the plaintiff, telling him Hooley represented the Guy Hunt campaign. Plaintiff, who had previously done printing for the campaign, prepared copies of the different brochures. The materials were then mass printed and were mailed to approximately 60,000 individuals. However, the plan did not produce the expected contributions and only a few thousand dollars were raised. During this period, a partial payment was made to the plaintiff with a check signed by Hooley and drawn on the "special account."
Approximately $1,400 remained in the "special account" after the election. This money was redeposited in Hunt's regular campaign account and was used to pay back one of the individuals who had provided money to initiate the fund-raising plan.
Subsequent to the election, the plaintiff ultimately presented a bill to the Hunt campaign for an unpaid balance of $3,686.30. Hunt refused to pay. As indicated above, the trial court entered judgment in favor of the plaintiff.
On appeal, Hunt through able counsel contends that he is not personally liable for the costs of printing the campaign literature because Hooley did not have the authority to obtain credit in his name. Hunt further contends that he expressly told Hooley that the "loans" and/or proceeds from the fund-raising would have to cover all of the expenses connected with the plan because the campaign could not afford it. Thus, Hunt seeks to avoid personal liability on account of the acts of Hooley.
At the outset, we note that we have not previously dealt with the question of a candidate's personal liability for campaign debts when a campaign organization such as the one at hand is involved. However, other jurisdictions treat such organizations as unincorporated political associations, not designed for purposes of trade or profit, fastening pecuniary liability on individual members, here the candidate, only by reason of the acts of such individuals or of their agents. Agency must be shown, not being implied from the mere act of association, and only those members who authorize or ratify the transaction are liable. American Art Works, Inc. v. Republican State Committee,177 Okla. 420, 60 P.2d 786 (1936). Alabama also follows the rules of agency when nonprofit unincorporated associations are involved. See, Dinsmore v. J.H. Calvin Co., 214 Ala. 666,108 So. 583 (1926). This court has likewise applied agency principles in a recent case involving a more informally run campaign, there finding the candidate — principal liable on a theory of apparent authority. Perry v. Meredith, Ala.Civ.App.,381 So.2d 649 (1980).
As seen from the above, it is this court's determination that the law regarding agency is applicable to the instant appeal. At the outset, we note that whether any agency relationship exists is a question of fact for the trial court and, as such, is subject to the ore tenus rule. Sherrill v. Frank MorrisPontiac-Buick-GMC, Inc., Ala., 366 So.2d 251 (1978). Under these circumstances this court will not disturb the trial court's decree unless plainly erroneous or manifestly unjust and against the great weight of the evidence. Alabama So.,Crip. C. A., Inc. v. Still Const. Co., Inc., 54 Ala. App. 390,309 So.2d 102 (1975).
Hunt contends the evidence did not support a finding that Hooley was his agent. Hunt argues that, at the time when the agreement with plaintiff was reached, Hooley was an independent contractor serving merely as a consultant to the campaign.
We do not agree. An agent, as representative of his principal, acts in the place of his principal and must be subject to a right of control. Wood Chevrolet Co., Inc. v. Bankof the Southeast, Ala., 352 So.2d 1350 (1977). *Page 212 
The record reveals that Hooley worked as "acting campaign director" and later as a consultant for the Hunt campaign. He was at all times paid a salary by the Hunt campaign of approximately $1,000 per month from which taxes and Social Security were withheld. During the period in question, his immediate supervisor was Hunt's campaign director who had the authority to call Hooley and tell him where to go and what to do. In addition, as indicated above, Hunt personally had initially rejected the fund-raising plan and later approved it telling Hooley to go ahead and make preparations. Hunt's campaign also paid Hooley's expenses incurred in the fund-raising plan. It also appears that Hooley regularly reported the progress being made on the project to Hunt himself. Thus, there is evidence to indicate that Hunt exercised sufficient control over Hooley to create an agency relationship. Wood Chevrolet, Inc., supra.
Since there is evidence to establish that an agency relationship existed, it is necessary to determine whether Hooley was authorized to bind the defendant personally on the printing contract.
We conclude that Hooley had at least apparent authority to bind Hunt. As was said in Pearson v. Agricultural Ins. Co.,247 Ala. 485, 488, 25 So.2d 164, 167 (1946):
 As between the principal and third persons, mutual rights and liabilities are governed by the apparent scope of the agent's authority which the principal has held out the agent as possessing, or which he has permitted the agent to represent that he possesses. . . . (Emphasis supplied.) (Citation omitted.)
Furthermore, a principal may vest his agent with apparent authority to perform an act by omission as well as commission, and such authority is implied where the principal passively permits the agent to appear to a third person to have authority to act on his behalf. Assured Growth Corp. v. Tomberlin, Ala.Civ.App., 334 So.2d 918 (1976). Although the principal may limit the agent's authority through secret instructions and restrictions, third persons ignorant of the restricted extent of the agent's authority may rely on the apparent scope of the agent's authority and their rights will not be affected so long as they deal in good faith. Blue Cross-Blue Shield of Alabamav. Thornton, 56 Ala. App. 678, 325 So.2d 187 (1975).
Here, there was evidence plaintiff had printed other material for the Hunt campaign. Indeed, there was even a plan, never implemented, to use plaintiff in advertisements as a representative black businessman who supported Hunt's candidacy. Hunt knew of this plan. Plaintiff was approached by Hooley concerning the printing job at issue. Hooley was introduced to plaintiff by Sullivan, who plaintiff knew to be connected with Hunt. The brochures, approved by Hunt, indicated they were to be paid for by the Hunt campaign and furthermore, that plaintiff was the printer.
Based upon such facts, we are not prepared to say that plaintiff did not exhibit good faith in relying upon the apparent scope of Hooley's authority. Likewise, the evidence permits a finding of apparent authority because Hunt knowingly or passively permitted Hooley to act on his behalf.
In other words, in approving the printing, Hunt allowed it to appear to plaintiff that he personally authorized the project. Davis's name clearly appeared thereon, thus indicating Hunt approved of the selection of plaintiff as printer. This being so, if Hunt desired to avoid liability, he should have made this clear to plaintiff. See, Hafenbraedl v. LeTendre forCongress Committee, 61 Wis.2d 665, 213 N.W.2d 353 (1974).
This conclusion is buttressed by the other dealing between the parties. If this particular venture was to be separate and apart from the campaign as Hunt contends, under these facts, it was incumbent upon him to communicate this fact to plaintiff. By his inaction, Hunt, the principal, "placed the agent `in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business' was justified in assuming that the agent had authority. . . ."Pearson v. *Page 213 Agricultural Ins. Co., supra, 247 Ala. at 488, 25 So.2d at 167
(citation omitted). Apparent authority thus existing, any secret limitations, uncommunicated to plaintiff, were ineffectual in limiting Hooley's authority as relates to plaintiff. Blue Cross-Blue Shield of Alabama v. Thornton,supra.
Finally, the defendant contends that the evidence does not support the amount of the verdict. We do not agree.
The plaintiff's complaint alleged that over $3,600 was due and owing. Plaintiff testified that this amount was owed and was reasonable. However, this amount included some work done after the printing in issue. The original bill sent to the Hunt campaign was for $2,951.67. Adding proper interest to the $2,951.67, the amount awarded, to wit, $3,114.01, is supported by the evidence. Put another way, our review of the record indicates there is evidence to support the amount of the judgment.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.
 ON REHEARING
The appellant's counsel in brief in support of his application for rehearing points out that this court misstated a fact in our original opinion. He is technically correct. On page 9 of the original opinion the following is found: "The original bill sent to the Hunt campaign was for $2,951.67."
This sentence should read as follows: "The bill regarding the services in question, which was initially sent to Sullivan's public relations firm, was for $2,951.67."
Opinion extended. Appellant's application for rehearing overruled.
WRIGHT, P.J., and BRADLEY, J., concur.