429 So.2d 976 (1983)
Catherine Parker PITTMAN, a/k/a Rene Parker Pittman, Executrix of the Estate of James Bradford Pittman, Deceased
v.
Jim MARTIN, Individually.
Sherry WEBSTER, as Administratrix of the Estate of Ronald Webster
v.
Jim MARTIN, Individually.
80-927, 80-928.
Supreme Court of Alabama.
March 25, 1983.
*977 Joseph M. Brown, Jr. of Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellant.
James J. Duffy, Jr., Carroll H. Sullivan and James J. Duffy, III, of Inge, Twitty, Duffy & Prince, Mobile, for appellee.
ADAMS, Justice.
The appeal in 80-927 is by Catherine Parker Pittman as executrix of the last will and testament of James Bradford Pittman, deceased, who was killed in an airplane crash on October 30, 1978. The appeal in 80-928 is by Sherry Webster as administratrix of the estate of Ronald Webster, deceased, who was killed in the same crash mentioned above.
The defendant-appellee herein, Jim Martin (Martin), was the Republican candidate for the United States Senate in 1978 in opposition to Donald Stewart. An aircraft, owned by co-defendant Charles Lloyd Escue, III (Escue), was loaned to Martin for use in his election campaign. That aircraft was involved in the crash which took the lives of plaintiffs' decedents while being operated by Carl Feldman. On the day of the crash the aircraft was being utilized to transport plaintiffs' intestates from Montgomery to Huntsville for campaign purposes.
Plaintiffs brought these wrongful death actions against Jim Martin on a theory of vicarious liability. The complaints alleged three causes of action against Martin. The first count was for negligence based upon the acts of Mr. Feldman as an agent, servant or employee of Martin; the second was for negligent entrustment of the aircraft to Mr. Feldman; the third was for the causing or authorizing of Mr. Feldman to operate an aircraft for the purpose of transporting the plaintiffs' decedents. A fourth cause was added by amendment alleging a joint venture between Escue and Martin to cause or authorize Mr. Feldman to operate an aircraft for the purposes of transporting the plaintiffs' decedents. These appeals, which have been consolidated for consideration by this court, are from summary judgments granted in favor of Martin.
The dispositive issue on appeal involves the propriety of entering summary judgments in favor of Martin.
On a motion for summary judgment, under Rule 56, A.R.C.P., all reasonable inferences from the facts are viewed most favorably to the non-moving party, and the moving party is required to establish that the other party could not recover under any discernible circumstances. Bryant v. Morley, 406 So.2d 394 (Ala.1981). If there is any evidence supporting the position of the party against whom the motion for summary judgment is made, so that a triable issue is entitled to go to the jury, summary judgment cannot be entered.
The facts viewed most favorably to the plaintiffs are as follows. Pursuant to federal law, a campaign committee was formed for the election of Martin to the United States Senate. Martin was not a member of the campaign committee, nor was he in charge of the day-to-day activities of the campaign. Tom Stephenson, Martin's campaign manager, along with Betty Jean Phipps Selby, the executive secretary of the Jim Martin for Senate Campaign Committee, was in charge of the day-to-day activities of the campaign.
*978 Escue, now deceased, testified in the case. He testified that he had a discussion with Martin concerning the use of the aircraft and Martin told him to work out the details with his campaign manager, Mr. Stephenson. The following is an excerpt from his testimony:
"Q (By Mr. Finkbohner) All right, let me start again. Did you have a conversation with Mr. Martin about the terms of the in kind donation of the plane to the Martin Campaign?
"A To the best of my recollection, we had a discussion about it, yes, sir.
"Q What if anything do you recall that you said to him about the terms of the in kind donation?
"A As best as I can recall, I think I mentioned to him the conditions under which I would let the campaign use the airplane, and he said to be sure to work all that out with Tom Stevenson [sic]."
Escue further testified that there was a stipulation with Mr. Stephenson, Martin's wife, and possibly Martin that his aircraft would be flown only by a qualified pilot.
Apparently, Escue did talk to Mr. Stephenson, and Mr. Stephenson relayed instructions to Ms. Selby that the plane was not to be flown unless there was a qualified pilot. Selby hired Feldman, but failed to find out whether he was qualified or whether he had a pilot's license.
This case is one of first impression in Alabama. Although it would seem that the fact situation involved here would be a matter of general occurrence throughout the country, there is little precedent to shed light on this problem. Simply stated, the issue is whether traditional agency principles can and should be applied in the context of a political campaign where tort liability is invoked. Our Court of Civil Appeals has had some experience in assessing liability against political candidates using agency principles in a contractual setting.
In Perry v. Meredith, 381 So.2d 649 (Ala. Civ.App.1980), a printer sued to recover from a candidate for materials supplied to the candidate's campaign organization. The issue before that court was whether the campaign staff possessed apparent authority to bind the defendant for campaign materials ordered, accepted, and used by the staff. The evidence before the trial court was that the plaintiff and defendant had discussed the plaintiff's providing printed campaign material to the defendant; that a member of the campaign staff ordered and accepted the materials; and that the candidate failed to communicate to the printer any limit on the campaign staff's authority to place and accept such orders. The Court of Civil Appeals applied general principles of agency and affirmed the trial court's finding that the candidate was individually liable for the debt.
Likewise, in Hunt v. Davis, 387 So.2d 209 (Ala.Civ.App.1980), a gubernatorial candidate in the general election of November 1978 was held personally liable for the cost of printing his campaign literature. In that case, the candidate met with a member of his staff, a Mr. Hooley, and a public elections consultant, Sullivan, in order to make plans to solicit money for his campaign. Hooley was a salaried employee of the campaign. Hooley and Sullivan contracted with the plaintiff to print brochures to be used in the fund raising endeavor. The Court of Civil Appeals held that there was sufficient evidence to indicate an agency relationship between Hooley and the candidate.
We believe the resolution of the issues involved in those cases by the Court of Civil Appeals to be sound, but we are loath to extend the rationale of those cases into the area of tort law where a political campaign is involved. Political commentators have aptly described political campaigns as organized confusion. See generally, J. Brown and P. Seib, The Art of Politics (1976); J. McGinnis, The Selling of the President, 1968 (1969). A political campaign is not like a business venture, where the principal and agent may have worked together over a long period of time. A political campaign, rather, is of relatively short duration, usually not more than a few months, and is characterized by intensive activity and decision making. By the force of his personality *979 and precepts, the candidate hopes to draw to his cause diverse groups and individuals, many of whom he may never know worked for him. It is also not like a joint venture because it is not for a business purpose and the campaign is so organized that different individuals have definite duties and responsibilities, such as campaign manager, media representative, scheduler, finance chairman, etc. Yet, in the political campaign, Americans are allowed to exercise two of their fundamental constitutional rights: the right to vote and the right to freedom of expression. We believe that to apply agency principles in the political arena where tort liability is invoked would have a chilling effect on these important constitutional rights.
This is not to say that a political candidate is immune from liability where a tort has been committed in connection with political activity. However, we believe the better rule to be, and we so hold, that a political candidate can only be individually liable where he has personally authorized an individual to perform the type of act which caused plaintiff's injuries or death, or has subsequently ratified such actions. See American Art Works, Inc. v. Republican State Committee, 177 Okl. 420, 60 P.2d 786 (1936).
As we have previously stated, these cases come to us on appeals from the summary judgments in favor of Martin. If there were some factual support for a legal theory upon which the plaintiffs could recover, summary judgment should not have been granted. We believe there is a scintilla of evidence, enough to allow submission to the jury of the claim that Martin did actually ratify or authorize the type of action which caused the death of plaintiffs' intestates. Ex parte Bennett, 426 So.2d 832, (Ala.1982). See also, the testimony of Escue's conversation with Martin.
For the foregoing reasons, these cases are remanded to the trial court, to allow application of the legal standard which we have enunciated.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, FAULKNER, ALMON and SHORES, JJ., concur.
JONES, EMBRY and BEATTY, JJ., concur specially in part; dissent in part.
EMBRY, Justice (concurring specially in part; dissenting in part.)
To say that I disagree with the majority's reasoning is a gross understatement. It is incredulous to me that a rule of law can be carved from the facts in this case which protects political candidates while leaving others not so classified subject to the well settled rules of agency. To me, this is nothing more or nothing less, than a case governed by the classic rules of agency with regard to vicarious liability.
Initially, I note the general principles of law applicable to this appeal.
In Alabama, ordinarily the question of agency is one of fact for determination by a jury. Wood Chevrolet Co. v. Bank of the Southeast, 352 So.2d 1350 (Ala.1977). Generally, summary judgment on the issue of agency would, therefore, be inappropriate. Oliver v. Taylor, 394 So.2d 945 (Ala.1981). If the facts establish the relationship of principal and agent, the intention of the parties is immaterial, and the character of the relationship is not affected by an agreement between the parties that an agency does not exist, or that some other relation does exists. Semo Aviation, Inc. v. Southeastern Airways, 360 So.2d 936 (Ala.1978). There can be no agency relationship absent a right of control by the principal over his agent, Ex parte Wilson, 408 So.2d 94 (Ala. 1981); however, it is not essential that the right of control be exercised so long as the right actually exists. Wood Chevrolet Co. v. Bank of the Southeast, supra. Furthermore, it is well settled in Alabama that a principal will be liable for the tortious acts of his agent which are done within the course and scope of the agent's employment. The liability is imputed to the principal, regardless of the actual participation of the principal in the intentional, wanton, *980 or negligent act or omission, under the doctrine of respondeat superior. Aggregate Limestone Co. v. Robison, 276 Ala. 338, 161 So.2d 820 (1964).
Based upon the foregoing legal principles, I turn to the record before the trial court, with the attendant presumptions, to determine whether that court erred in entering summary judgment in these cases.
The evidence establishes that, pursuant to federal law, a campaign committee was formed for the election of Jim Martin to the United States Senate. Martin was not a member of the campaign committee nor was he in charge of the day-to-day activities of the campaign; however, Martin did possess the ultimate power of control over the campaign's affairs. Tom Stephenson, Martin's campaign director, testified, in oral deposition, that Martin and his wife had complete veto power in following the schedule of the campaign, as put together by the committee, and could alter the schedule according to their desires. Martin sat at the helm of his campaign and directed the campaign according to what he thought was his best interest. Stephenson stated in this regard:
"Q All right. Would that apply, this concept that the candidate is the campaign, would that apply not only over you, but all the other resources of the campaign, if you understand what I am saying? The committee members themselves, secretarial staff, the scheduler and what have you, that he really sat at the helm of all of these individuals so as to be the ultimate authority in the campaign?
"A Sure. They were all gathered together by the force of his personality, by the attempt to work for him and have him elected to the Senate to represent their interest and clearly, if they, you know, strayed sufficiently far from what he thought was in the best interest of the campaign, that would be changed, because, you know, it was his campaign."
Stephenson also testified that he conversed daily with Martin and that he answered directly to Martin in his activities as campaign director. Betty Jean Phipps Selby, executive secretary of Martin's campaign committee, also testified, in oral deposition, to Martin's retention of power over the direction of his campaign:
"Q Did Mr. Martin retain, to your knowledge and from a factual standpoint, veto power? By that, the power to overrule some direction in the campaign?
"A Oh, definitely."
It is clear from the record that Martin and Escue initially discussed the use of the airplane although Martin left the details to be worked out by Stephenson. As relates to that discussion, Escue testified, in oral deposition, as follows:
"Q Did you have any discussion with Mr. Martin concerning the aircraft?
"A Yes, we had some discussion but I don'tI think we just discussed the use of it and, again, I told Mr. Martin that they were to furnish the gas and so forth and so on. He left all of that to his director of the campaign, Mr. Stephenson, to handle the details of it and be sure that we had all the detailshe wanted to be sure it was worked out with Tom before they used the aircraft."
One prerequisite to the use of the aircraft, noted by Escue in his testimony, was that the pilot had to be qualified to fly that particular aircraft. Escue further noted that such stipulation was communicated to Stephenson, Mrs. Martin, and possibly even Martin.
Although Martin did not personally employ Feldman to pilot the aircraft, one directly responsible to Martin on a day-to-day basis, Betty Selby, did make that decision based on her authority and in furtherance of Martin's election campaign. Selby testified that it was her responsibility to see that the pilots were qualified to fly any aircraft being used by the campaign. There is evidence in the record that she failed to do this with reference to Feldman.
The issue of whether a candidate can be held responsible on a theory of vicarious liability for the tortious acts of his agent, employee or servant is one of first impression before this court, and as far as I can *981 find, one of first impression before any appellate court in the United States.
As noted by the majority, Alabama has dealt directly with the question of the principal-agent relationship regarding a candidate and his campaign workers in two recent decisions by the Court of Civil Appeals involving contractual liability: Perry v. Meredith, 381 So.2d 649 (Ala.Civ.App. 1980), and Hunt v. Davis, 387 So.2d 209 (Ala.Civ.App.1980).
I find no reason why the rationale applied in the Hunt and Perry cases, in a contractual context, should not be applied in this case, in a tort law context, if a jury were to find that an agency relationship did exist. I do find sufficient evidence in the record to submit that issue to a jury for its determination. Summary judgment here was inappropriate and constitutes reversible error.
I conclude the judgments of the trial court should be reversed and the case remanded for trial under the above-mentioned principles.
JONES and BEATTY, JJ., concur.