To say that I disagree with the majority's reasoning is a gross understatement. It is incredulous to me that a rule of law can be carved from the facts in this case which protects political candidates while leaving others not so classified subject to the well settled rules of agency. To me, this is nothing more or nothing less, than a case governed by the classic rules of agency with regard to vicarious liability.
Initially, I note the general principles of law applicable to this appeal.
In Alabama, ordinarily the question of agency is one of fact for determination by a jury. Wood Chevrolet Co. v. Bank of theSoutheast, 352 So.2d 1350 (Ala. 1977). Generally, summary judgment on the issue of agency would, therefore, be inappropriate. Oliver v. Taylor, 394 So.2d 945 (Ala. 1981). If the facts establish the relationship of principal and agent, the intention of the parties is immaterial, and the character of the relationship is not affected by an agreement between the parties that an agency does not exist, or that some other relation does exists. Semo Aviation, Inc. v. SoutheasternAirways, 360 So.2d 936 (Ala. 1978). There can be no agency relationship absent a right of control by the principal over his agent, Ex parte Wilson, 408 So.2d 94 (Ala. 1981); however, it is not essential that the right of control be exercised so long as the right actually exists. Wood Chevrolet Co. v. Bankof the Southeast, supra. Furthermore, it is well settled in Alabama that a principal will be liable for the tortious acts of his agent which are done within the course and scope of the agent's employment. The liability is imputed to the principal, regardless of the actual participation of the principal in the intentional, wanton, *Page 980 
or negligent act or omission, under the doctrine of respondeat superior. Aggregate Limestone Co. v. Robison, 276 Ala. 338,161 So.2d 820 (1964).
Based upon the foregoing legal principles, I turn to the record before the trial court, with the attendant presumptions, to determine whether that court erred in entering summary judgment in these cases.
The evidence establishes that, pursuant to federal law, a campaign committee was formed for the election of Jim Martin to the United States Senate. Martin was not a member of the campaign committee nor was he in charge of the day-to-day activities of the campaign; however, Martin did possess the ultimate power of control over the campaign's affairs. Tom Stephenson, Martin's campaign director, testified, in oral deposition, that Martin and his wife had complete veto power in following the schedule of the campaign, as put together by the committee, and could alter the schedule according to their desires. Martin sat at the helm of his campaign and directed the campaign according to what he thought was his best interest. Stephenson stated in this regard:
 "Q All right. Would that apply, this concept that the candidate is the campaign, would that apply not only over you, but all the other resources of the campaign, if you understand what I am saying? The committee members themselves, secretarial staff, the scheduler and what have you, that he really sat at the helm of all of these individuals so as to be the ultimate authority in the campaign?
 "A Sure. They were all gathered together by the force of his personality, by the attempt to work for him and have him elected to the Senate to represent their interest and clearly, if they, you know, strayed sufficiently far from what he thought was in the best interest of the campaign, that would be changed, because, you know, it was his campaign."
Stephenson also testified that he conversed daily with Martin and that he answered directly to Martin in his activities as campaign director. Betty Jean Phipps Selby, executive secretary of Martin's campaign committee, also testified, in oral deposition, to Martin's retention of power over the direction of his campaign:
 "Q Did Mr. Martin retain, to your knowledge and from a factual standpoint, veto power? By that, the power to overrule some direction in the campaign?
"A Oh, definitely."
It is clear from the record that Martin and Escue initially discussed the use of the airplane although Martin left the details to be worked out by Stephenson. As relates to that discussion, Escue testified, in oral deposition, as follows:
 "Q Did you have any discussion with Mr. Martin concerning the aircraft?
 "A Yes, we had some discussion but I don't — I think we just discussed the use of it and, again, I told Mr. Martin that they were to furnish the gas and so forth and so on. He left all of that to his director of the campaign, Mr. Stephenson, to handle the details of it and be sure that we had all the details — he wanted to be sure it was worked out with Tom before they used the aircraft."
One prerequisite to the use of the aircraft, noted by Escue in his testimony, was that the pilot had to be qualified to fly that particular aircraft. Escue further noted that such stipulation was communicated to Stephenson, Mrs. Martin, and possibly even Martin.
Although Martin did not personally employ Feldman to pilot the aircraft, one directly responsible to Martin on a day-to-day basis, Betty Selby, did make that decision based on her authority and in furtherance of Martin's election campaign. Selby testified that it was her responsibility to see that the pilots were qualified to fly any aircraft being used by the campaign. There is evidence in the record that she failed to do this with reference to Feldman.
The issue of whether a candidate can be held responsible on a theory of vicarious liability for the tortious acts of his agent, employee or servant is one of first impression before this court, and as far as I can *Page 981 
find, one of first impression before any appellate court in the United States.
As noted by the majority, Alabama has dealt directly with the question of the principal-agent relationship regarding a candidate and his campaign workers in two recent decisions by the Court of Civil Appeals involving contractual liability:Perry v. Meredith, 381 So.2d 649 (Ala.Civ.App. 1980), and Huntv. Davis, 387 So.2d 209 (Ala.Civ.App. 1980).
I find no reason why the rationale applied in the Hunt andPerry cases, in a contractual context, should not be applied in this case, in a tort law context, if a jury were to find that an agency relationship did exist. I do find sufficient evidence in the record to submit that issue to a jury for its determination. Summary judgment here was inappropriate and constitutes reversible error.
I conclude the judgments of the trial court should be reversed and the case remanded for trial under the above-mentioned principles.
JONES and BEATTY, JJ., concur.