This is an appeal from an order granting the plaintiff's motion for summary judgment. In the order the trial court also denied the defendant's motion for summary judgment, and ordered the defendant, Warrior Drilling and Engineering Company, Inc. (Warrior)[1] to pay the plaintiff, Martha *Page 32 
McCracken King (King), $19,306.26 for royalties owed under certain mineral leases.
The case arose out of the following facts:
On November 27, 1973, D.D. McCracken and his wife, and J.E. King and his wife (the appellee in this case), executed two oil and gas leases (leases 1 and 2) to Warrior. Lease 2 included McCracken's 1/3 interest in 180 acres of land lying to the south of the land included in lease 1, as well as all the land in lease 1. Lease 2 also provided a larger sum of money for delay rental than lease 1. Lease 2 contained a clause voiding the lease unless drilling began on the property within one year. The leases were the same in all other respects. Both allowed a 3/16 royalty to the lessors. (See diagrams following this opinion.)
On May 24, 1974, another lease (lease 3) was executed. Lease 3 mistakenly overlapped 35 acres covered by leases 1 and 2, but otherwise covered the 180 acres included in lease 2 but not in lease 1. Lease 3 included not only McCracken's 1/3 interest in the 180 acres, but also the other 2/3 owned by his co-tenants. Lease 3 provided only a 1/8 royalty. Subsequent to the death of McCracken and one of his co-tenants, appellee King became owner of a 1/2 mineral interest in this tract. (Tract 1. See diagram.)
A well was completed on land in the North 1/2 of Section 4 on August 4, 1974. This land was included in leases 1 and 2. The well was capable of production, but was not connected to a pipeline until June 13, 1977. In the interim, it was shut in and operations ceased. Warrior tendered, and the lessors accepted, four annual delay rental payments in the amount provided in lease 1. The first payment specifically referred to lease 2; the second did not make specific reference; and the last two referred to lease 1. After McCracken's death, King signed a ratification showing change of ownership of lease 1. Later, she ratified lease 3. Lease 2 was never ratified.
A well was completed on the South 1/2 of Section 4, covered by leases 2 and 3, and began producing July 17, 1979. The question before the trial court in this case was whether King is entitled to a 3/16 royalty or a 1/8 royalty in this well. In its summary judgment, the trial court allowed King a 3/16 royalty in the 1/3 interest which came to her from McCracken, and a 1/8 royalty in the 1/6 interest which came to her from one of the other co-tenants. In other words, the trial court held that lease 2 applied to McCracken's interest, rather than lease 3.
Warrior generally argues that the trial court's grant of summary judgment in favor of King was error. In doing so, he raises the following questions:
 1. Does the record show a genuine issue of material fact as to whether lease 2 is void?
 2. Does the record show a genuine issue of material fact as to whether lease 3 was a novation, extinguishing lease 2 as to McCracken?
 3. Is King estopped from asserting that lease 2 controls in this case?
We decline to consider the question of estoppel, raised for the first time on appeal. As to the other questions, we find that there are genuine issues of material fact in the record, and reverse the summary judgment.
The rule of review of a summary judgment has been set out by this court many times. The movant has the burden of negating the existence of any issue of material fact. Ryan v. CharlesTownsend Ford, Inc., 409 So.2d 784 (Ala. 1981); Plant v. Reid,Inc., 365 So.2d 305 (Ala. 1978). All reasonable inferences from the facts are viewed most favorably to the nonmoving party.Pittman v. Martin, 429 So.2d 976 (Ala. 1983); Bryant v. Morley,406 So.2d 394 (Ala. 1981). If there is any evidence supporting the position of the party against whom the motion for summary judgment is made, so that a triable issue is raised, summary judgment cannot be entered. Pittman v. Martin, supra. See alsoMountain v. Collins, 430 So.2d 430 (Ala. 1983); Harold BrownBuilders, Inc. v. Jordan Company, 401 So.2d 36 (Ala. 1981); *Page 33 Campbell v. Alabama Power Company, 378 So.2d 718 (Ala. 1979).
With regard to the construction of instruments, this court has said that if an instrument is unambiguous, its construction and effect are questions of law which may be decided, under appropriate circumstances, by summary judgment. Federal LandBank of New Orleans v. Terra Resources, Inc., 373 So.2d 314 (Ala. 1979); Wheeler v. First Alabama Bank,364 So.2d 1190 (Ala. 1978). The case before us is unusual in that it involves three overlapping leases, all, apparently, equally unambiguous, containing conflicting provisions. Because questions of fact arise in determining which provisions apply in the present circumstances, we find summary judgment inappropriate.
Appellant Warrior argues that lease 2 terminated automatically for failure of Warrior to meet a condition of the lease, namely, the payment of delay rentals under the lease for the period of time when a well was complete, but not in production.[2] See H. Williams, Oil and Gas Law, § 601.5 (1981). Warrior states that all delay rentals paid during that period of time were paid under lease 1. Warrior further argues that lease 2 was intended by the parties to terminate, as evidenced by the ratification by King of leases 1 and 3. We agree that the facts outlined by Warrior are evidence that lease 2 may have terminated. On the other hand, the facts that lease 2 was executed and filed in the probate court, that lease 2 contained provisions not found in lease 1, that Warrior's president wrote a letter to King and her husband in which he referred to a lease that appears to be lease 2, and that one of the delay rental payments made reference to lease 2, are evidence that lease 2 was intended to have effect, and may not have terminated. It is true that the lease required delay rentals to be paid. However, the lease also contained the following language:
 Said delay rental shall be apportionable as to said land on an acreage basis, and a failure to make proper payment or tender of delay rental as to any portion of said land or as to any interest therein shall not affect this lease as to any portion of said land or as to any interest therein as to which proper payment or tender is made. Any payment or tender which is made in an attempt to make proper payment, but which is erroneous in whole or part as to parties, amounts or depository, shall nevertheless be sufficient to prevent termination of this lease . . .; provided, however, Lessee shall correct such error within thirty (30) days after Lessee has received written notice thereof from Lessor.
The foregoing language makes the payment of delay rentals in an amount other than that called for in the lease of little significance as a factor in terminating the lease, where the lessor accepted the payments without complaint. In short, we find an issue of fact regarding the effect of lease 2, rendering summary judgment in favor of either party inappropriate.
Warrior next argues that, if lease 2 did not terminate, lease 3 constituted a novation of lease 2 regarding D.D. McCracken's interest in Tract 1.
This court has held that to establish a novation there must be: (1) a previous valid obligation; (2) an agreement of the parties thereto to a new contract or obligation; (3) an agreement that it is an extinguishment of the old contract or obligation; and (4) the new contract or obligation must be a valid one between the parties thereto. St. Clair Industries,Inc. v. Harmon's Pipe and Fitting Company, 282 Ala. 466,213 So.2d 201 (1968); Friday Lumber Company v. Johnston, 278 Ala. 661, 180 So.2d 259 (1965). The trial court, in its order and judgment, found that Warrior had failed to prove the third element of a novation. It then went on to grant King a summary judgment, finding that "it would be speculative at best to determine that *Page 34 
D.D. McCracken (from whom Plaintiff derives the 1/3 interest in Tract One) voluntarily voided a lease with a 3/16 royalty in order to bind himself to a 1/8 royalty."
We agree with the trial court that Warrior has not proved all the elements of a novation as a matter of law. However, we find that the very fact that all of Tract 1 was covered by lease 3, while only McCracken's interest was covered by lease 2, could have constituted incentive or consideration for McCracken to accept a lesser royalty in exchange for a greater likelihood that drilling would actually take place. In Placid Oil Companyv. Taylor, 325 So.2d 313, 53 O. G.R. 477 (La.App. 1975), the Louisiana court said:
 The determining factor in deciding whether a novation has been effected is the intention of the parties. The intention to novate may be shown by the character of the transaction, and by the facts and circumstances surrounding it, as well as by the terms of the agreement itself.
Placid Oil Company, 325 So.2d at 316.
There is little evidence in the record to indicate the character of the transaction surrounding the execution of lease 3, or the facts and circumstances thereof. For this reason we hold that summary judgment is not appropriate on the issue of novation.
Finally, Warrior argues that King should be estopped to assert the validity of lease 2. Warrior admits in its brief that estoppel was not pleaded or argued before the trial court. Estoppel is an affirmative defense, which must be specially pleaded. Rule 8 (c), A.R.Civ.P.; Hendricks v. Blake, 291 Ala. 575, 282 So.2d 82 (1973). Generally, a defense not asserted in the trial court will not be considered for the first time on appeal. Green v. Standard Fire Insurance Company of Alabama,398 So.2d 671 (Ala. 1981). In this case we find no circumstances which would justify overriding the general rule. Therefore, we decline to consider the issue of estoppel.
The summary judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[EDITORS' NOTE: LEASE 1. IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 35 
[EDITORS' NOTE: LEASE 2. IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: LEASE 3. IS ELECTRONICALLY NON-TRANSFERRABLE.]
[1] This company is presently operating under the name of Howell Pipeline Company, Inc.
[2] We note that if lease 2 terminated between 1974 and 1977, then 180 of the 185 acres composing Tract 1 (see diagram) are covered only by lease 3, which provides a 1/8 royalty. *Page 36